WILLIAM CAMPBELL V. FARMERS & MERCHANTS BANK OF ELK CREEK, NEBRASKA.

FILED SEPTEMBER 16, 1896. No. 6791.

1. **Review:** TIME TO FILE PETITION IN ERROR. To invest this court with jurisdiction to review on error a judgment of the district court, a petition in error must be filed with the clerk of this court within one year after the date of the rendition of the judgment sought to be reversed.

2. **Appeal and Error.** An appeal does not lie to the supreme court from the judgment of a district court rendered in an action purely legal in its nature. This court can only review such judgment in a proceeding in error.

3. **Corporations:** REORGANIZATION: CORPORATE DEBTS. The purchase of part of the assets of a copartnership or corporation by a new corporation, organized by the members of the old corporation or copartnership, does not raise a conclusive presumption against the new corporation that by its purchase it assumed or became liable for the debts of the old corporation or copartnership, notwithstanding the fact that the new corporation engaged in and continued to carry on the business in which the old corporation or copartnership had been engaged. Such facts at most raise a rebuttable presumption that the new corporation assumed the liabilities of the old corporation or copartnership. (*Reed Brothers Co. v. First Nat. Bank of Weeping Water*, 46 Neb., 168.)

4. **Partnership.** A partnership is a distinct entity, having its own property, debts, and credits, and, for the purposes for which it was organized, it is a person, and as such is recognized by the law.

5. ———: PREFERRING CREDITORS. A copartnership, even though in failing circumstances, has the right to pay a part of its creditors in full to the exclusion of others, provided such payments are made with an honest purpose.

6. Fraud. In this state the question of fraudulent intent is always a question of fact and not a question of law. (Compiled Statutes, ch. 32, sec. 20.)

7. Partnership: LIABILITY FOR DEBTS: EVIDENCE. Evidence examined, and *held* to sustain the finding of the district court that the defendant in error had not assumed the liabilities of a copartnership, a part of whose assets it had purchased.

ERROR from the district court of Johnson county. Tried below before BUSH, J.

The opinion contains a statement of the case.

*J. H. Broady* and *W. H. Kelligar*, for plaintiff in error:

The transfer is void because it assumed to be a preference of creditors of the old bank, which was made solvent by the transaction, as subsequent events demonstrated. (*State v. Commercial State Bank*, 28 Neb., 677; *Lyons v. Perry Stove Mfg. Co.*, 24 S. W. Rep. [Tex.] 16; *Sawyer v. Hoag*, 17 Wall. [U. S.], 610; *Hibernian Ins. Co. v. St. Louis & New Orleans Transportation Co.*, 13 Fed. Rep., 516; *Ingwersen v. Edgcombe*, 42 Neb., 740; *Tillson v. Downing*, 45 Neb., 549.)

For the purposes of plaintiff's case the new bank is the old bank and the identity is complete, and a right to recover at law obtains. (*City Nat. Bank of Poughkeepsie v. Phelps*, 97 N. Y., 44; *Eans v. Exchange Bank*, 79 Mo., 182; *Hughes v. School District*, 72 Mo., 643; *Metropolitan Nat. Bank v. Claggett*, 141 U. S., 520; *Michigan Insurance Bank v. Eldred*, 143 U. S., 293; *Reed v. First Nat. Bank of Weeping Water*, 46 Neb., 168.)

If the identity was not preserved, the taking of the assets of the old bank by the new bank rendered the latter liable to the creditors of the old bank, and, therefore, liable to plaintiff. (*Continental Nat. Bank v. National Bank of Commonwealth*, 50 N. Y., 575; *Blair v. Wait*, 69 N. Y., 113;

1 Beach, Equity Jurisprudence, secs. 284, 286; *Jansen v. Williams*, 37 Neb., 869.)

*J. Hall Hitchcock* and *E. W. Thomas*, contra:

A cashier cannot pay his private debts out of the funds of the bank. The law will not permit an agent's private interest to come between his principal and himself. (*West St. Louis Savings Bank v. Shawnee County Bank*, 5 Otto [U. S.], 557; *Lee v. Smith*, 84 Mo., 304.)

Bank officers cannot bind the bank by an unlawful act, nor outside the line of business of the bank. Like other agents, a bank cashier must act within the scope of his authority, to bind his principal, unless his acts are ratified, and it cannot be claimed that the unlawful acts of the cashier were ever ratified in this case, as all the testimony shows that no other person connected with the bank knew anything about the transaction until long after the bank was closed. (*Kennedy v. Otoe County Nat. Bank*, 7 Neb., 59; *Merchants Bank v. Rudolf*, 5 Neb., 527; *Rich v. State Nat. Bank*, 7 Neb., 201; *Miller v. McIntyre*, 6 Pet. [U. S.], 61; *United States v. Dunn*, 6 Pet. [U. S.], 51; *Bank of Metropolis v. Jones*, 8 Pet. [U. S.], 12; *First Nat. Bank v. Ocean Nat. Bank*, 60 N. Y., 291; *Franklin Bank v. Steward*, 37 Me., 519; *Washington Bank v. Lewis*, 22 Pick. [Mass.], 24; *Harper v. Calhoun*, 7 How. [Miss.], 203; *Wyman v. Hallowell*, 14 Mass., 58*; *Lloyd v. West Branch Bank*, 15 Pa. St., 172; *Merchants Bank v. State Bank*, 10 Wall. [U. S.], 675; *Bank Commissioners v. Bank of Buffalo*, 6 Paige Ch. [N. Y.], 497.)

RAGAN, C.

In the district court of Johnson county William Campbell sued the Farmers & Merchants Bank of Elk Creek, Nebraska. Campbell in his petition alleged for a first cause of action that the defendant was a banking corporation, organized under the laws of the state, doing business at Elk Creek, Nebraska; that it was the successor of the Bank of Elk Creek, at that place; that on the 20th

of December, 1890, he deposited $3,000 with the Bank of Elk Creek, for which that institution issued to him a certificate of deposit; that on the 28th of April, 1892, the Farmers & Merchants Bank was organized as the successor of the Bank of Elk Creek; that said last named bank then ceased to do business and the Farmers & Merchants Bank began business as its successor; that on the said 28th of April, 1892, the Farmers & Merchants Bank took and converted to its own use in its banking business the resources of the Bank of Elk Creek; that on the 20th of December, 1892, the Farmers & Merchants Bank took up the certificate of deposit which had been issued by the Bank of Elk Creek and issued to plaintiff two others in its place; that at the time of the conversion of the assets of the Bank of Elk Creek the Farmers & Merchants Bank assumed the liabilities of said Bank of Elk Creek, and that the Farmers & Merchants Bank was indebted to it for the amount called for by said two certificates. For a second cause of action the petition of Campbell, in addition to the averments already stated, claimed a judgment against the bank for the sum of $1,000 and interest on a certificate of deposit issued on the 3d of April, 1892, by the Bank of Elk Creek to Campbell's wife, and by her assigned to him. A jury was waived and the issues tried to the court, which found in favor of Campbell and against the bank on the first cause of action, and against Campbell and in favor of the bank on the second cause of action. To reverse the judgment dismissing his second cause of action Campbell has prosecuted to this court a petition in error and the Farmers & Merchants Bank is here only as defendant in error.

1. The transcript of the proceedings in the court below was filed in this court within six months after the date of the rendition of the judgments, but the bank has never filed in this court a petition in error. This court, then, is without jurisdiction to review on error the judgment pronounced against the bank. (Code of Civil Procedure, sec. 592; *Wistedt v. Beckman*, 37 Neb., 499.) But counsel

for the bank seem to be of opinion that this is an equity proceeding and insist, as the transcript of the proceedings had below was filed here within six months after the date of the rendition of the judgment complained of, that the supreme court can review the judgment on appeal.    But we think the proceeding is one purely legal in its nature, and which calls for the exercise of none of the equity powers of the court.    Campbell by his action seeks an ordinary money judgment against the new bank, because, as he alleges, that bank was the successor of the Bank of Elk Creek, the original debtor—that is, that the Bank of Elk Creek had merely changed its name without destroying its identity; and on the further ground that the new bank had assumed the obligations of the old one. We cannot, therefore, disturb the judgment rendered by the district court in favor of Campbell and against the Farmers & Merchants Bank on the first cause of action set out in Campbell's petition.

2. The argument made by Campbell for a reversal of the judgment of the district court pronounced against him is that the finding of the court on which such judgment was based is not supported by sufficient evidence. There is little, if any, material conflict in the evidence. It shows that from April, 1885, until April, 1892, one Russell and one Holmes were copartners; that they were engaged in conducting a banking business at Elk Creek, Nebraska; that such copartnership business was carried on under and by the name of the Bank of Elk Creek, hereinafter called the old bank; that while said copartnership business continued the old bank issued the certificate of deposit made the subject of this action; that some time in April, 1892, some fourteen gentlemen, a number of them being depositors of the old bank and one of them being Holmes, of the old copartnership, organized the defendant in error, hereinafter called the new bank, a corporation for the purpose of conducting a banking business at Elk Creek, Nebraska; that on the 28th of April, 1892, the stockholders of the new bank met in

the office of the old bank and certain negotiations then took place between the stockholders of the new bank and Holmes, representing the old bank, which resulted as follows:

The old bank sold to the new bank its furniture and fixtures at the price of .......... $1,292 22
Cash in its vaults ........................ 570 90
Money on deposit in a bank at Lincoln ...... 300 00
Money on deposit in a bank at Omaha ...... 7 97
Overdrafts due it from its customers ........ 1,993 40
And notes belonging to it of the value of .... 11,302 71

In consideration of this the new bank agreed to pay the following liabilities of the old bank:

Deposits subject to check .................. $3,102 02
Unremitted collections made .............. 3,000 00
A claim in favor of a man named Bagley .... 2,224 00
Overdrafts made by the old bank against its correspondents ...................... 1,637 80
Outstanding certificates of deposit ......... 5,536 38

At the time this transfer or sale took place the old bank had notes on hand belonging to it of the face value of $31,703.11. In other words, the new bank by the deal did not acquire all the property of the old bank, but it had notes remaining belonging to it of the face value of $20,403.40, after delivering to the new bank the assets transferred to it. The agreement of the new bank was to pay the deposits, the unremitted collections, the Bagley claim, and overdrafts unconditionally according to what the books showed they were, and to pay the certificates of deposit to the extent of $5,503.38 as they were presented. The evidence further shows that the new bank made all the payments as it agreed; that it did not pay the certificate of deposit sued for by Campbell here because at the time it was presented it had paid out and took up certificates of deposit due from the old bank more than it had promised to pay. The pleadings do not allege that this transfer was fraudulent, nor do the facts

stated in the pleadings, if proved, warrant such an infer-
ence, and there is no evidence in the record but that the
entire transaction between the old and the new bank was
in good faith.   The evidence sustains the finding of the
court that the new bank did not assume and promise to
pay the claim of Campbell sued for in this action; that
the banking business conducted and carried on by the
new bank after the 28th of April, 1892, was not a con-
tinuation of the banking business of the old bank; that
while the new bank began doing a banking business on
the 28th of April, 1892, and conducted such business in
the former banking house of the old bank, the new bank
is not identical with the old one.

But it is insisted on argument here that if the identity
between the old and the new bank is not preserved, that
the taking of the assets of the old bank by the new one
rendered the new bank liable to the creditors of the old
bank, and to sustain this contention we are cited, among
other authorities, to *Reed Brothers Co. v. First Nat. Bank of
Weeping Water*, 46 Neb., 168.   That case holds: "Where
a partnership engaged in a general mercantile business,
in straitened and failing circumstances, incorporated,
and the assets and business of the partnership were trans-
ferred or assigned to the corporation and appropriated to
its objects and purposes, the business of the partnership
being continued by the corporation, the corporation was
presumptively liable for the partnership debts."   But the
facts in that case are not like the facts in the case at bar.
Here the copartnership, the old bank, so far as the record
shows, was not in straitened or failing circumstances,
nor were all the assets of the old bank transferred to the
new one, nor was the new bank in fact the old bank under
a different name.   Furthermore, if the facts in this rec-
ord are sufficient to raise the presumption that the new
bank, by taking what assets it did of the old one, assumed
the payment of the debts of the old bank, then the answer
is that such presumption is entirely overthrown by the
evidence.   The testimony is overwhelming and uncontra-

dicted that the new bank assumed of the liabilities of the old one those already stated, and no more. There are authorities which hold that where the stockholders of a corporation organize a new one and appropriate all the assets of the old corporation and continue its business, such acts afford conclusive evidence that the new corporation by its conduct assumed the liabilities of the old one. Such are *Hibernia Ins. Co. v. St. Louis & New Orleans Transportation Co.*, 13 Fed. Rep., 516; *Brum v. Merchants Mutual Ins. Co.*, 16 Fed. Rep., 140; *Slattery v. St. Louis & New Orleans Transportation Co.*, 4 S. W. Rep. [Mo.], 79. But we have not been cited to any authority, nor have we been able to find a case which holds that the purchase of part of the assets of a copartnership or corporation by a new corporation organized by the members of the old corporation or copartnership raises a conclusive presumption against the new corporation that by its purchase it assumed and became liable for the debts of the old corporation or copartnership, notwithstanding the fact that the new corporation engaged in and continued to carry on the business in which the old corporation or copartnership had been engaged.

Another argument is that the act of the old bank in transferring a part of its assets to the new one was void, because the effect of the transaction was to prefer and pay in full some of the creditors of the old bank. We are not aware of any law which denies to a copartnership the right to prefer its creditors, provided such preference is made and accepted in good faith and for a valuable consideration. A partnership is a distinct entity, having its own property, debts, and credits, and, for the purposes for which it was organized, it is a person, and as such is recognized by the law. (*Roop v. Herron*, 15 Neb., 73.) And a copartnership, even though in failing circumstances, has the right to pay a part of its creditors in full to the exclusion of others, provided such payments are made with an honest purpose. (*Dietrich v. Hutchinson*, 20 Neb., 52; *Richards v. Leveille*, 44 Neb., 38; *Ætna Ins. Co. v. Bank*

*of Wilcox,* 48 Neb., 544.) Another answer to this contention is that the pleadings in this case do not attack this transfer as fraudulent in fact. In this state the question of fraudulent intent is always a question of fact and not a question of law, as has been many times decided. (Compiled Statutes, ch. 32, sec. 20; *Goldsmith v. Erickson,* 48 Neb., 48.) And had an issue been made that the transfer was fraudulent in fact, the evidence would not support a finding that the transfer from the old to the new bank was made with any sinister intent whatever.

3. As already stated, the evidence disclosed that the new bank not only paid all the debts of the old one which it assumed, but that it paid out several thousand dollars to the creditors of the old bank which it did not assume; and a final argument is that the new bank, by making these payments, lulled Campbell into a feeling of security until the new bank had suspended payment, and that, therefore, the new bank is now estopped to deny its liability. But the answer to this is that the record does not disclose that Campbell or his assignor neglected to present the certificate of deposit to the new bank prior to the time it was presented because of the fact that he was aware that the new bank was paying the debts of the old one; nor is any such an issue as this made in the pleadings in this case; and finally, the evidence discloses beyond all controversy that the cashier of the new bank betrayed his trust and, without the knowledge, consent, or authority of the new bank or its directory, made payments on the debts of the old bank in excess of the amount assumed by the new one, out of the assets and moneys of the new bank. The judgment of the district court is right and is

AFFIRMED.