REED BROTHERS COMPANY ET AL. V. FIRST NATIONAL BANK OF WEEPING WATER.

FILED OCTOBER 15, 1895.    No. 5924.

1. **Incorporation of Failing Partnership:** LIABILITY OF CORPORATION FOR PARTNERSHIP DEBTS. Where a partnership engaged in a general mercantile business, in straitened and failing circumstances, incorporated, and the assets and business of the partnership were transferred or assigned to the corporation and appropriated to its objects and purposes, the business of the partnership being continued by the corporation, the corporation was presumptively liable for the partnership debts.

2. **Corporations:** RATIFICATION OF ACTS OF AGENTS OR OFFICERS. The acts of an agent or officer of a corporation which he was not authorized to perform may be ratified by it. The approval may be by express action or indirectly. It may be proved by evidence of a direct recognition or acceptance of the act or an acquiescence, or may be an inference from the facts and circumstances shown.

3. **Fraudulent Conveyances:** SALE OF GOODS: GROUNDS OF ATTACHMENT. Statements by a debtor engaged in a general mercantile business disclosing a determination to defeat the claim of a creditor, and arrangements made in pursuance of such intention, combined with the further facts that the stock of

goods has, during several months, been as rapidly as possible converted into cash by sales, and depleted in the aggregate several thousand dollars and no satisfactory account given of the disposition of moneys derived from the sales, may be sufficient to sustain an attachment on the stock of goods on the grounds of a fraudulent disposal or concealment of property.

ERROR from the district court of Cass county. Tried below before HALL, J.

See opinion for reference to authorities.

*Byron Clark, Joseph R. Clarkson,* and *Isaac E. Congdon,* for plaintiffs in error.

*Wooley & Gibson, contra.*

HARRISON, J.

The First National Bank of Weeping Water commenced this action against Reed Bros. Company, alleged to be a corporation doing business at Weeping Water, E. L. Reed, and James A. Leach to recover the sum of $6,358.15, alleged, in the petition filed, to be due the bank upon two promissory notes, as executed and delivered to it by the parties named. The answer denied, generally, each and every allegation of the petition except that of the corporate character of Reed Bros. Company, which it admitted, and alleged that the notes sued upon were given for debts which were the liabilities of a copartnership doing business under the name and style of Reed Bros. & Co. and were signed by the company or partnership, and were not a liability of the corporation; and especially denied that the signature of Reed Bros. Company was attached to the notes in suit, or either of them. The reply of the bank was as follows: " Comes now the above named plaintiff, and for reply to defendant's answer denies each and every allegation therein, except such as admit the allegations of plaintiff's petition. Further replying plaintiff alleges that if the notes sued on

are not those of Reed Bros. Company, but is the signature of Reed Bros. & Co., that the plaintiff was deceived at the time said notes were signed, and led to believe by the representations of E. L. Reed, president of the corporation, that they were signed Reed Bros. Company, and that it is immaterial whether the signature is Reed Bros. Company or Reed Bros. & Co., for the reason that the assets sought to be reached are those of Reed Bros. & Co. absorbed by Reed Bros. Company, and that while said business is conducted in the name of Reed Bros. Company it is still but a partnership name, the firm of Reed Bros. & Co. having never been legally converted into a corporation, or the corporation of Reed Bros. Company having never been legally formed or incorporated." The counsel for Reed Bros. Company and its co-defendants filed a motion to strike what was styled in the motion the "pretended reply" from the files, the grounds therefor being three in number: First, that the issues were complete without the reply; second, the allegations contained in said pretended reply were immaterial and irrelevant; third, for the reason that the reply was filed without leave of court and out of time. This motion was sustained by the court, but, upon motion, leave was granted to refile it *instanter*. A general demurrer to the reply was then filed, which, upon hearing, was overruled and an exception noted. At some date after the commencement of the action there was filed an affidavit in attachment, the grounds alleged therein being "That the defendants, and each of them, are about to remove their property, or a part thereof, out of the jurisdiction of the court with intent to defraud their creditors; are about to convert their property, or a part thereof, into money for the purpose of placing it beyond the reach of their creditors; have property or rights of action which they conceal; have assigned, removed, disposed of, and are about to dispose of, assign, and remove their property, or a part thereof, with intent to defraud their creditors." An undertaking was also filed and approved

and a writ of attachment issued and served by levy upon a stock of general merchandise then in the possession of, and being handled and sold by the corporation, at its place of business in Weeping Water.   There was a separate motion filed for defendants, the corporation, Leach, and Reed, respectively, to discharge the attachment, the reasons being the same in each, and as follows: "First, because the facts stated in the affidavit are not sufficient to justify the issuing of the same; second, because the statement of facts in said affidavit are untrue; third, because the facts set forth in the affidavit are not shown to have existed at the time the order of attachment was issued and the affidavit filed." These motions were heard and overruled and the attachment sustained May 31, 1892, an exception being noted for each party, for whom motion had been filed.   During the progress of the case there was a petition filed by the bank, the relief sought being the appointment of a receiver to take possession and dispose of the effects of the corporation, Reed Bros. Company, and after answer to this petition and reply to the answer a trial of the issues with reference to the appointment of a receiver was had and the application was denied.   There was a trial to the court without the intervention of a jury, of the issues in the main action, and findings and judgment in favor of the bank, and the attached property ordered sold.   Motions for new trial were filed on behalf of each of the parties defendant, and upon hearing they were overruled and exceptions noted on behalf of such parties, and the case has been presented to this court for review.

The first assignment of error which we shall notice is that the court erred in overruling the demurrer to the reply.   We are inclined to the view of counsel for plaintiffs in error, that the reply was unnecessary.   The existence of the company as a corporation was alleged in the petition and admitted by the answer, and the bank could not in a reply change front entirely and make this a suit against the

copartnership and deny the existence of what it had pleaded
in the petition, *i. e.,* the corporate being of the company.   It
is further assigned for plaintiffs in error in this connection
that the court, having overruled the demurrer to the reply  ·
and thus outlined the issues, evidence was offered and al-
lowed to be introduced, the tendency and object of which
was to show that the corporation was conceived and born
of a fraudulent purpose in regard to the creditors of the
copartnership, was but a device having for its object the de-
frauding of creditors of the partnership, and hence with-
out a legal being, and naught but the copartnership under
the mask of an attempted incorporation.   Evidence of
the character indicated was adduced and received during
the trial.   We think it is quite clear, however, that it was
not with the purpose and intent stated by counsel for
plaintiffs in error in their argument, but as tending to
show how and why the indebtedness, which was originally
that of the copartnership, became that of the corporation,
and for such purpose it was in the main competent.   As
we view the action as established by the pleadings, and as,
from its course during the hearing, the trial court evidently
did, it was against the corporation, and to so maintain it
devolved upon the bank, or, failing in this, to fail entirely.
The evidence which was introduced at the trial of the ap-
plication for a receiver, having been presented in transcript
form, was allowed and made a part of the testimony dur-
ing the trial of the issues in the case proper and in respect
to the attachment and contained fully as much of the alleged
objectionable matter as any other portion of the testimony.
If counsel expected to present and insist upon this point in
the case they should have, instead of agreeing that it become
part of the record, continued their objections.   Further-
more, the case was tried by the court without the interven-
tion of a jury, and it must be held to have been considered
only in the portions and to the extent it was competent
and material, and it follows that the action of the court in

overruling the demurrer, if erroneous, was clearly without prejudice to the rights of the complaining parties.

We will not give a summary of the entire evidence or a discussion of its parts and phrases applicable to the issues, but will refer particularly to those portions which we deem specially indicate the reasons which, probably, largely influenced the trial court to the conclusions reached and announced, and only generally to other portions. It was disclosed by the evidence that there was a copartnership engaged in a general mercantile business in Weeping Water, this state, under the firm name and style of Reed Bros. & Co., and which had existed for a number of years under this or a very similar name; that on or immediately prior to April 1, 1890, the members composing the firm were E. L. Reed, Harry D. Reed, James A. Leach, and Helen F. Reed, or the heirs of Lucius F. Reed, deceased; that on this last mentioned date the firm had an indebtedness of about $30,000 and was possessed of a stock of goods of the value of $20,000, and notes and accounts of the aggregate face value of $10,000 or $12,000. On this 1st day of April, 1890, the corporation styled Reed Bros. Company was formed, the parties incorporators being the same as the members of the partnership with the addition of J. H. Bellows and R. S. Wilkinson. The $20,000 worth of merchandise owned by the partnership was made the fund or property basis of the corporation, and stock aggregating a like amount, in shares of $100 each, was issued and taken by the parties as follows: E. L. Reed, seventy-five shares; Harry D. Reed, twenty-five shares; Helen F. Reed, fifty shares; James A. Leach, twenty-five shares; R. S. Wilkinson, ten shares; and J. H. Bellows, ten shares. The certificates of stock distributed to Harry D. Reed and Helen F. Reed by their face value represented in amount the interest each had in the $20,000 stock of merchandise when it belonged to the partnership. The twenty-five shares allotted to James A. Leach repre-

sented his interest in the partnership and $690.67, which, it is stated in the evidence, he paid to E. L. Reed at the time the shares of stock were delivered to him. The R. S. Wilkinson shares were executed in his wife's name and were issued in payment of an indebtedness of the partnership to Wilkinson for services rendered for it by him as an employe in the capacity of book-keeper. J. H. Bellows, it is claimed, purchased the ten shares which were allotted to him, and executed and delivered to E. L. Reed his promissory notes in the amount of their face value, which were not paid and the shares were returned to E. L. Reed. It is also of the evidence that the corporation received title to and possession of the merchandise from E. L. Reed, that he guarantied the payment of the debts of the partnership and received the stock of goods for so doing, and turned it over to the corporation, and issued, or caused to be issued, to the persons hereinbefore named, certificates of stock, in the manner and for the purposes we have just indicated, mainly to extinguish their claims as partners against the merchandise as partnership property. It was further shown that the stock of the corporation, except the ten shares standing in the name of Mrs. Wilkinson, was, just a short time prior to the commencement of this action, placed under the control of E. L. Reed, or he was allowed, for some reason which was not disclosed at the trial, to assign it to J. V. Farwell & Co. as collateral security for the payment of indebtedness of the former partnership in the sum of $8,000, which it is further claimed E. L. Reed had assumed, and of which he had guarantied the payment. The evidence in regard to the inception and formation of the corporation, including its succeeding to the property in and possession of the merchandise and business of the partnership, and the manner in which these events transpired and were effected, has no force in this case to the extent that it is claimed that it shows an illegal and fraudulent attempt to organize a corporation and absorb the as-

sets of the partnership and thus defraud the creditors of the firm, for this action was predicated upon a promise or contract of the corporation and the suit was instituted against it to collect from it, as a corporation, the amount alleged to be due by virtue of its promise. The corporate existence and character of the company were pleaded and recognized in the petition. The action was not in any extent or in any degree to recover whatever of the property of the partnership might be discovered and subject it to the payment of the debts owing by the firm at the time the corporation was created, on the ground of fraud and deceit practiced in its formation, but, under the issue raised by the statement in the answer, that the debts evidenced by the notes in suit "form no liability or claim against the defendant corporation herein," this evidence was competent and material as tending to show that this debt of the firm was assumed by the corporation, although no open agreement was entered into to that effect, and these facts, coupled with the others in evidence, fully warranted a conclusion in this case that the partnership became incorporated and received and accepted a transfer of the assets of the partnership to be appropriated and used in forwarding the objects and purposes of the corporation, and by so doing it assumed the liabilities or debts of the firm. (Cook, Stock & Stockholders [3d ed.], sec. 671; *Williams v. Colby*, 6 N. Y. Sup., 459; *Breman Savings Bank v. Branch-Crookes Saw Co.*, 16 S. W. Rep. [Mo.], 209; *McElwee Mfg. Co. v. Trowbridge*, 62 Hun [N. Y.], 471; *Haslett v. Wotherspoon*, 1 Strob. Eq. [S. Car.], 209; *Booth v. Bunce*, 88 Am. Dec. [N. Y.], 372.)

The testimony in respect to which signature was attached to the notes in suit, whether that of the corporation or of the partnership, was conflicting, and the finding of the trial court that it was the corporate name will not be disturbed. E. L. Reed was president of the corporation, and he was the person who, according to the finding of the trial

court, signed the corporate name to these notes. The authority to execute notes for the corporation was conferred upon its secretary and treasurer, and it is contended that the president was without authority to sign the notes, and his doing so did not bind the corporation. The corporation could give notes, it was liable for this debt, and after the notes were signed in its name by the president of the company there was evidence to warrant the conclusion that it acquired knowledge of the act of signing, or that at least it was known to the secretary and treasurer, who was its business manager and who possessed power to act for it in the execution of notes. This, with other evidence bearing upon this point, was sufficient to sustain the finding of the trial court, that the corporation acquiesced in and ratified the act of the president by which its signature appeared upon the notes. (4 Thompson, Corporations, secs. 4941, 5286; *Singer Mfg. Co. v. Belgart,* 4 So. Rep. [Ala.], 400; Taylor, Private Corporations, secs., 212, 214, 215; *Campbell v. Pope,* 96 Mo., 468; *Indianapolis Rolling Mill Co. v. St. Louis, F. S. & W. R. Co.,* 7 Sup. Ct. Rep., 542.)

The assignments of error in this case were mainly directed against the findings made by the trial court, and the views we have expressed dispose of those which refer to the findings on the questions adjudicated in the main case. There are some which relate to the conclusion announced by the trial judge in the attachment branch of the case. The one which we will notice particularly was, in substance, that the stock of goods belonged to the corporation and had for several months been as rapidly as possible converted into cash and the stock reduced in the aggregate at least several thousand dollars, and no satisfactory account was made of the money derived from the sales, and that an intent was shown to defraud at least the plaintiff creditor. The evidence as to some points involved in the attachment portion of the suit was, we think, somewhat meager and unsatisfactory, and we do not deem it necessary, nor do we

think it would serve any useful purpose to quote from, summarize, or discuss it at length.   There was testimony to support the finding of the trial court, and we cannot say, after a careful examination of the evidence, such finding was manifestly wrong, hence it will not be disturbed. The judgment of the district court is

AFFIRMED.