THE COMMONWEALTH TRUST COMPANY, *as Trustee,. etc., Appellant,* v. THE COCKERILL ZINC COMPANY (THE GAS CITY DRILLING COMPANY *et al., Interpleaders, Appellees*).

No. 17,530.

SYLLABUS BY THE COURT.

1. MORTGAGEES IN POSSESSION — *Improvements — Liens — Priorities.* While the power of the court in foreclosure cases to create preferential liens upon the mortgaged property in favor of persons who have furnished labor or material for its betterment or preservation is ordinarily limited to the property of corporations or concerns in the business of which the public has an interest, nevertheless, where possession of mortgaged property of a corporation in a business in which the public has no interest is upon default surrendered by the mortgagor to the mortgagee, and the latter, while in possession and before the final decree, employs labor and purchases supplies which are used to improve and preserve the property and to increase its value as security, it is proper for the court to make the claims for such labor and material liens paramount to the lien of the mortgage.

2. INTERPLEAS—*Filed after Judgment—Judicial Discretion.* It is within the sound discretion of the trial court to permit persons claiming an interest in mortgaged property to file interpleas after judgment of foreclosure has been entered and before the final disposition of the cause.

Appeal. from Allen district court. Opinion filed April 6, 1912. Affirmed.

*Altes H. Campbell,* and *John F. Goshorn,* for the appellant.

*Travis Morse, G. E. Pees, H. A. Ewing, S. A. Gard, G. R. Gard, E. D. Mikesell,* and *C. E. Benton,* for the appellees.

The opinion of the court was delivered by

PORTER, J.: The appellant, as trustee, brought this. action to foreclose a mortgage or deed of trust executed by the Cockerill Zinc Company, a corporation, to secure

Trust Co. v. Zinc Co.

certain bonds. The trust deed covered all the property of the company, including three zinc smelting plants and appurtenances, and other property used in connection therewith, two of the plants being located in Allen county and the third in Wilson county. The appellees are interpleaders who filed claims for material and labor furnished and supplied in the operation and betterment of the zinc plants during the period after default in the payment of interest, when, it is claimed, the bondholders were in possession of the property either through the trustee or through their own agent. The main question involved in the appeal is whether the court erred in making the judgments in favor of the interpleaders first liens on the mortgaged property in preference to the lien of the bondholders. The appeal also questions the power of the court to permit interpleas to be filed after the sale under the decree of foreclosure and while confirmation of sale was pending. The latter question applies to a part of the interpleaders only.

The mortgage or trust deed provided that after six months' default in interest, upon notice by the trustee or any bondholder, and the election of the majority of the bondholders, the entire principal sum and interest should become due; further, that upon such default the mortgagor, upon demand of the trustee, should surrender possession, and the trustee, or such agent as it should appoint, might take possession of all the property, including the company's books and accounts, and operate and manage the plants and make all needed repairs, alterations, additions, and improvements as it should deem wise, receive rents, incomes, and profits, "and out of the same pay all proper costs and expenses of so taking, holding and managing the same." Another provision reads:

"The said trustee shall be authorized to pay reasonable compensation out of the trust estate to such person or persons as it may employ in the administration or management of this trust; and the said trustee shall

be entitled to just compensation for all services rendered by it in connection with such trust, which shall be paid out of the trust estate."

The trustee was not to be personally liable for any debt contracted by it "during any period wherein the trustee shall manage the mortgaged premises upon entry or voluntary surrender as aforesaid." On July 1, 1909, the Cockerill Zinc Company was in default in its interest payments, which had continued for a year. Twelve hundred bonds, of the face value of $1,200,000, were issued and secured by the mortgage. A. B. Cockerill, president of the zinc company, owned 534 of the bonds, George E. Nicholson owned 300, and the National Bank of Commerce, of St. Louis, Mo., owned 250. After the default had continued for more than six months, the holders of a majority of the bonds, which included two hundred of A. B. Cockerill's bonds held by a bank as collateral security, requested the Cockerill Zinc Company, in writing, to substitute the Commonwealth Trust Company, of St. Louis, Mo., for the New York Trust Company, the original trustee named in the mortgage. The substitution was duly made on July 2, 1909, at a meeting of the directors of the zinc company, and at the same meeting a resolution was adopted directing A. B. Cockerill, as president of the company, to deliver possession of all the property covered by the mortgage to the substituted trustee. A few days later, on July 12, A. B. Cockerill, George E. Nicholson, and the National Bank of Commerce, of St. Louis, holders of 1084 of the bonds, made a written request to the Commonwealth Trust Company to act as substituted trustee and to take charge of the property through Mr. Nicholson and administer the trust for the bondholders.

The evidence does not show that the trustee took possession formally, but it is clear from all the evidence that while Cockerill, as president of the company, continued in charge, he was under the direction and con-

trol of Nicholson, to whom he reported almost daily, showing in detail the operation of the plants and the cost and expense incurred; and this continued until the sale under the foreclosure decree in May, 1910. The business was conducted in the name of the Cockerill Zinc Company, but Nicholson came to the properties at different times and gave orders and directions for the management of the business, and upon his orders the plants were finally closed. It appears that the bondholders were kept fully advised of all the facts and met frequently to discuss the situation of affairs, and that Nicholson was selected to represent them because he was experienced in the smelting business and was a large holder of the bonds. The evidence tended to show that during all this time he was held out by the bondholders as their trustee, or as agent for the substituted trustee in their interest. For some reason it was not deemed advisable to foreclose the mortgage at once, and probably it was the intention to allow Mr. Cockerill time to see if he could make the business profitable or procure financial assistance from outside parties to enable him to pay off the interest charges. Nicholson reported to the bondholders in January, 1910, that the plants were being operated at a loss, and advised foreclosure. The plants were closed down, and in February this action was commenced. Three of the interpleaders, Stanberry, Donnan, and the Gas City Drilling Company, furnished materials and supplies, including the sinking of several gas wells on the mortgaged property, before the plants were closed down and while Nicholson was in control of the property. They filed their interpleas upon leave of court soon after the foreclosure proceedings were commenced. The other interpleaders were permitted by the court to file their claims after the sale had been made under the decree of foreclosure and after a motion to confirm the sale had been filed. Their claims are for supplies and labor furnished. At the time the plants were closed there were at the

La Harpe plant 4000 retorts, at Gas City 6000, and at Altoona 7000. These retorts, if allowed to cool, would have been ruined. At the three plants there were twenty furnaces which it was necessary to keep on "dead fire," or otherwise they would cool off and damages amounting to several thousand dollars would result. In order to keep the insurance effective and to prevent tools and appliances from being carried off, it was necessary that watchmen be employed at all the plants. The interpleaders who were permitted to file claims after the decree were persons who performed services of this character after the closing down of the plants. It is true that the power of the court to create preferential liens in favor of persons who have furnished material, supplies, or labor is ordinarily limited to corporations or concerns in which the public has an interest, such as public-service corporations, where the necessity of keeping the business as a going concern for the convenience of the public and to preserve the security furnishes the reason for making such claims paramount to the lien of a prior mortgage. (*International Trust Co. v. Decker Bros.*, 152 Fed. 78; 34 Cyc. 299.) Receiver's certificates issued for the sole purpose of carrying on a business in which the public has no interest would not as a general rule be authorized by a court of equity; and if the claims of the interpleaders had nothing to stand upon except that they were incurred over the objections of the bondholders for the purpose of keeping the business of the zinc company a going concern, a different question would be presented. The facts are that the bondholders were mortgagees in possession with the consent of the mortgagor; and all of the indebtedness represented by the interpleas was incurred in their efforts to improve and preserve the property and to add to its value as security for their own claims. We think there was sufficient evidence to warrant the court in holding that the property was taken over by the bondholders in July, 1909.

We are unable to distinguish any difference between the situation presented and that where the holder of a first mortgage upon an unfinished business building, having taken possession with the mortgagor's consent, should, before proceeding to foreclose, incur indebtedness for completing the building and in preserving it as security for his claim. In such a case, it would be most inequitable to permit him to assert the priority of his mortgage lien to that of the claims of persons who at his request furnished the material and labor necessary to create and preserve the security. The trust deed, by the provision quoted *supra*, authorizes the payment out of the trust estate of compensation "to such persons" as the trustee "may employ in the administration or management" of the estate. What the trustee might do for the bondholders as their agent and as agent of the mortgagor, it would seem the bondholders, to whom the mortgagor had surrendered the property and control of the business, ought to be able to do for themselves.

It can not be doubted that the court had power to permit the filing of interpleas at any time before the final disposition of the case. Having acquired jurisdiction for one purpose, it could and properly should retain it for the purpose of rendering justice to all parties in interest. It could do this after judgment as well as before, and without any express provision of the code. (*Gibson v. Ferrell,* 77 Kan. 454, 94 Pac. 783.) The permission to file the interpleas after judgment rested in the sound discretion of the court. Besides, it could not possibly have injured the appellant to permit the interpleas to be filed when they were.

The judgment is affirmed.