No. 18,669.

THE SPADRA-CLARKSVILLE COAL COMPANY, *Appellee* and *Appellant,* v. GEORGE E. NICHOLSON et al. (THE KANSAS ZINC COMPANY, *Appellant* and *Appellee*).

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Bondholders Take Possession of Corporate Assets—Continue Business—Incur Debts—Purchase Assets at Mortgage Sale—Organize New Corporation—Transfer Property to New Corporation without Consideration—New Corporation Becomes Liable for Debts Incurred by Bondholders.* A manufacturing corporation, without having issued any shares of its authorized capital stock, gave a mortgage on all of its property to secure an issue of bonds, with a provision that upon default in the payment of interest the bondholders

Coal Co. v. Nicholson.

were authorized to take all the mortgaged property into their possession through the trustee, and operate and manage the business and property as a going concern for the purpose of preserving it as security. The company defaulted on its payments, and at the request of a majority of the bondholders the trustee took possession of all the property and business, making one of the principal bondholders its agent, and the business was continued for more than two years by the bondholders in the name of the mortgagor. Thereafter, at the request of the bondholders, the trustee foreclosed the mortgage, and the property was sold under the decree and purchased by the bondholders, who thereupon organized a new company as a holding company to take the title to the property, and the sheriff's deeds were made conveying all the property to the new company, none of the authorized capital stock of which was issued. No consideration was paid for the purchase of the property by the new company, except the interest its incorporators owned as bondholders. In an action by plaintiff to recover for material and supplies furnished to the bondholders while in possession, and which were used for the purpose of preserving the property as security for the bonds, it is held that it would constitute a fraud on the rights of the plaintiff to permit the new company to acquire the title to the property freed from such obligations; that the circumstances surrounding the creation of the new corporation and its succession to the business and property of the old show that there was, in fact, no purchase, but merely a change in the capacity in which the business was conducted. The same persons who conducted the business as bondholders in possession as mortgagees, changed from partners or bondholders to incorporators of the new company, and therefore plaintiff was entitled to judgment against the new company.

2. MOTION FOR NEW TRIAL—Ground "Erroneous Rulings"—Review. In a motion for a new trial it is sufficient to set forth the grounds in the language of the statute, and where such a motion recites "erroneous rulings" as one of its grounds, appellant can have a review of any ruling made on the trial respecting the admission of evidence.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed January 9, 1915. Modified.

*Altes H. Campbell,* and *John F. Goshorn,* both of Iola, for The Kansas Zinc Company.

*H. A. Ewing, S. A. Gard, G. R. Gard,* all of Iola, and
*E. D. Mikesell,* of Fredonia, for The Sparda-Clarks-
ville Coal Company.

The opinion of the court was delivered by

PORTER, J.: In order better to understand the present
case it will be necessary to refer to some facts involved
in certain previous litigation.

Many of the facts are recited in detail in the case of
*Trust Co. v. Zinc Co.,* 86 Kan. 860, 122 Pac. 875. In that
case the Commonwealth Trust Company as trustee fore-
closed a mortgage or deed of trust given by the Cock-
erill Zinc Company to secure an issue of one thousand
two hundred bonds, each for the face value of $1000.
By the terms of the mortgage the maturity of the bonds
was to be accelerated by the default in interest, upon the
election of the majority of the bondholders, and there
was a provision that upon demand of the trustee the
mortgagor should surrender possession, and the trustee
or such agents as it should appoint might take posses-
sion of all the property, which included three zinc
smelting plants and other property located in Allen
county and in Wilson county, and also the company's
books and accounts. It also provided that the trustee
or agent should operate and manage the plants, carry
on the business, and make all needed repairs, altera-
tions, additions and improvements, and out of the in-
comes and profits pay all proper costs and expenses of
such taking, holding and managing the properties.
There was a default in the payment of the interest on
the bonds, and thereafter, on July 12, 1909, A. B. Cock-
erill, George E. Nicholson and the National Bank of
Commerce of St. Louis, who were the holders of
1084 of the bonds, made a written request to the Com-
monwealth Trust Company of St. Louis to act as sub-
stituted trustee and to take charge of the property
through Mr. Nicholson, and administer the trust for
the bondholders. It was not deemed advisable to fore-
close the mortgage at once.

A. B. Cockerill, who was president of the Cockerill Zinc Company, continued for a time in charge of the properties, and one of the main questions involved in the present suit is whether during this time he was under the direction and control of Nicholson, and whether Nicholson represented himself and the other bondholders mentioned; in other words, whether the bondholders were in possession of the property, conducting it from the time of the making of the agreement until February 1, 1910, when the action to foreclose the mortgage was brought by the trust company.

In the case of *Trust Co. v. Zinc Co.,* supra, the question involved the power of the district court in the foreclosure proceedings to create preferential liens upon the mortgaged property in favor of certain interpleaders who furnished labor or material for the benefit of the property and its preservation, and it was held that, notwithstanding the business of the corporation was one in which the public had no interest, it was proper for the court to make the claims for labor and material, furnished to improve and preserve the property and increase its value as security, paramount liens to that of the mortgage, and the judgment was affirmed.

Thereafter the action in the district court to foreclose the mortgage proceeded to a sale, and the property was purchased by a new corporation, the Kansas Zinc Company. In the present action the plaintiff, a coal company, sues to recover $4531.21 on account of coal which it claims to have furnished the bondholders in the operation and preservation of the property prior to and during the foreclosure proceedings. In addition to the claim for coal furnished, the plaintiff sues upon several causes of action which have been assigned to it by other creditors and which embrace claims for material and supplies claimed to have been furnished in the same way to the bondholders while in possession and control of the property. The petition sets out the history of the organization of the Cockerill Zinc Company, the

41—93 KAN.

execution of the mortgage, the fact that upon the default in interest the bondholders through the trustee and through Nicholson, and A. B. Cockerill acting for himself and for the agents of the other bondholders and trustee, took possession of all the property covered by the mortgage and alleged that they had ever since held possession thereof, and that the coal sued for and the material represented by the other claims had been supplied for the purpose of operating and preserving the smelters, and had been contracted for by Cockerill and Nicholson as the agents and employees of the bondholders.

George E. Nicholson and the Kansas Zinc Company were the only defendants who answered. The answer expressly denies that Cockerill and the Cockerill Zinc Company, or either of them, were the agents of the other defendants, or that either of them was the agent of the Commonwealth Trust Company or any of the bondholders. The answer was verified and put in issue all allegations respecting the agency of any of the parties and their authority to bind the bondholders.

One of the issues at the trial was whether the bondholders of the Cockerill Zinc Company had taken possession of the properties of that company, and incidentally this involved the question of the authority of A. B. Cockerill and George E. Nicholson to bind the bondholders by their acts. One of the principal errors complained of is that the court overruled objections to certain evidence which it is claimed was incompetent, and without which it is insisted the trial court could not have found this issue in favor of the plaintiff. On the other hand, the plaintiff claims that the admission of the evidence was not made a ground of the motion for a new trial, and relies upon *Washbon v. Bank,* 86 Kan. 468, 121 Pac. 515, where it was ruled as follows:

"Certain evidence was admitted over the objection of plaintiffs. No complaint of the ruling was made in the motion for a new trial. *Held,* that the question can not be raised in this court." · (Syl. ¶ 1.)

It is said in the brief that one of the grounds of the motion for a new trial in the Washbon case was "error of law on the trial," and in the present case one of the grounds was stated to be "erroneous rulings." The foregoing quotation from the Washbon case is a general statement to the effect that where the motion for a new trial does not complain of a ruling on the admission of evidence, the question can not be raised in this court; but it was not intended in that case to decide that where a motion for a new trial recites as one of its grounds "error of law on the trial" or "erroneous rulings," an appellant can not have a review of any ruling made on the trial respecting the admission of evidence. It was assumed in that case that there was no complaint of such rulings in the motion for a new trial. Section 305 of the code gives as one of the statutory grounds for a new trial "erroneous rulings," and it has always been held that to set forth the grounds of the motion in the language of the statute is sufficient. (*Du Lee v. Blackburn,* 11 Kan. 190, 206; *Marbourg v. Smith,* 11 Kan. 554, 563.) It was suggested in the latter case, however, that for the defeated party to point out the specific errors complained of is a practice which should be encouraged. A different rule obtains in some of the states. For additional authorities to the effect that it is sufficient to set forth the grounds in the language of the statute, see 29 Cyc. 944, and cases cited. It is quite clear that the defendant is entitled to raise the objection in this court.

Part of the evidence objected to consists of documents attached to the deposition of George L. Edwards on the ground that they were not properly identified, and because copies were used instead of the originals. It appears from a stipulation in the case that the originals had been used in evidence in certain actions still pending in the circuit court of St. Louis, Mo. They were, therefore, unavailable, and it became necessary

to use copies. There were ninety-seven of these documents, and the correctness of many of them was testified to by witnesses at the trial, and we are unable to find that any prejudice resulted from their introduction. The principal complaint respecting evidence is that the deposition of A. B. Cockerill, which was not taken in the case, was used as evidence. It was taken and used and became a part of the record in the foreclosure case of *Trust Co. v. Zinc Co.*, 86 Kan. 860, 122 Pac. 875. Cockerill's death occurred before the trial of the present case. The plaintiff contends that the deposition was admissible because Cockerill was the principal bondholder. It is insisted that the evidence, aside from the deposition, sustains the contention that Cockerill, who was a party to all the transactions, was authorized to act in behalf of himself and the other bondholders, and, therefore, that his deposition was competent as containing admissions and declarations of a party jointly interested in the transactions, and as the agent of the others associated with him. We think it is of very little importance whether his deposition be regarded as competent evidence or not. The record, which is quite voluminous, is filled with what we consider sufficient evidence to sustain the judgment without reference to this deposition. The trust deed provided, among other things, that:

"The mortgagor, upon demand of the trustee, shall forthwith surrender to the trustee the actual possession of, and it shall be lawful for the trustee by such officer or agent as it may appoint, to take possession of all the property hereby conveyed or intended to be (with the books, papers and accounts of the mortgagor) and to hold, operate and manage the same."

The evidence shows that after the Commonwealth Trust Company was substituted as trustee on the request of the majority of the bondholders, including George E. Nicholson and the Bank of Commerce, a resolution was adopted by the board of directors of

the company ordering the president to deliver to the substituted trustee possession of the properties covered by the mortgage because the company had defaulted in the payment of interest on the bonds. It is admitted that on July 12, 1909, George E. Nicholson and the National Bank of Commerce of St. Louis, made a written request to the trust company to take charge of the property of the Cockerill Zinc Company "through George E. Nicholson, as agent and trustee for the bondholders, and to administer upon the same according to the provisions of said deed of trust." While Cockerill remained in the active charge of the properties, we think the evidence shows that from that time he reported almost daily to George E. Nicholson, giving in detail the operation of the plants and the costs incurred. The evidence, beyond any question, shows that he was under the direction and control of Nicholson until the decree of foreclosure. George L. Edwards was the attorney for a majority of the bondholders, and Cockerill and Nicholson advised with him from time to time respecting the management and control of the properties while the plants were being operated. Further than that, we think the evidence of Nicholson himself, and admissions and statements made by him, as testified to by numerous witnesses, including Mr. Northrup, a banker at Iola, show conclusively that the property had been taken into possession of the bondholders, and that Nicholson was in charge of the operation of these plants, and that Cockerill acted under him. In a letter to A. B. Cockerill, dated April 26, 1910, Edwards wrote as follows:

"Until better informed, I cannot direct payment of any bill for which it is claimed the bondholders are responsible until administration of the bondholders has been checked and their liability determined. . . . It is a puzzle I cannot understand and which must be made clear why the bondholders, resulting from possession of these properties for the period they were operating them, have become liable to pay, as I understand,

from thirty thousand to forty thousand dollars in the face of your reports that you were making money or breaking even."

Space will not permit a reference to the numerous exhibits and letters from Edwards to Cockerill and statements made by Nicholson himself, which were amply sufficient, in our opinion, to sustain a finding that the bondholders had taken possession of all the properties and were operating them through Nicholson and Cockerill. The trial was to the court, and it has been repeatedly held that the introduction of incompetent evidence under those circumstances will be presumed not to have influenced the court's finding. (See *Whiteley v. Watson,* post, p. 145 Pac. 568.)

It is contended by the defendant that there was no evidence showing whether all or a majority of the bondholders ever became stockholders in the Kansas Zinc Company, or that the subscribers to the capital stock of that company ever owned any of the bonds, or that any of the stockholders, directors or officers of the new company were ever stockholders of the Cockerill Zinc Company. George L. Edwards, counsel for the principal bondholders, was also vice president and manager of the Kansas Zinc Company, and in his deposition testified that there are no stockholders in the Kansas Zinc Company except the bondholders of the Cockerill Zinc Company; that the new company was organized for the purpose of buying in the properties of the other company at foreclosure sale on behalf of the bondholders, and that the property is held by this corporation for that purpose; that it was paid for in bonds of the old company, together with certain expense money which the bondholders advanced for the purpose of effecting a reorganization.

In the former case of *Trust Co. v. Zinc Co.,* 86 Kan. 860, 122 Pac. 875, it was held that the bondholders were mortgagees in possession, and that they had employed labor and purchased supplies which were used to improve and preserve the property and to increase its

value as security.  As observed, the trust deed authorized this, and the evidence in the present case shows that a majority of the bondholders acquiesced in the proceedings and that the property was managed and controlled by the bondholders through their trustee and agents, and that they continued in the possession and control of the property until after its sale under the decree of foreclosure when it was purchased by George L. Edwards and George E. Nicholson.  Shortly thereafter they assigned the certificate of purchase to the Kansas Zinc Company, the assignment being dated March 11, 1911.  On the 5th of February, 1913, the sheriff's deed was executed to the new company covering the property described in the order of sale.  The new company was organized under a charter issued by the state of West Virginia.  The authorized capital stock was fixed at $500,000.  The principal stockholders mentioned in the charter are Nicholson and Edwards.  The evidence shows that the new company paid nothing for this property, except that it stood ready, doubtless, to issue to the bondholders its stock in proportion to their holdings, but it was shown that no stock was ever issued by the company.

The main question to be determined is whether the new company can be held liable for the indebtedness sued for by the plaintiff.  The defendant's contention in this respect is that the new company can not be made liable for the debts of the old unless such liability was assumed as part of the consideration for the purchase of the property; or unless there is evidence to show that the transaction was a fraud on the creditors.  It is insisted that the new company purchased the property at sheriff's sale, freed from all obligations on account of debts and liabilities of the former company.  Of course, where a new company actually purchases from an old one, the rule is that there is no liability for the debts of the old, unless the new company assumes them as part of the consideration.

We think it must be held under the circumstances shown in evidence here that the new company is responsible for the particular debts sued for by the plaintiff. The grounds upon which we reach this conclusion are these: In the first place, the Cockerill Zinc Company never issued any of its stock. There were no stockholders according to the evidence. From the time the property was taken into control by the bondholders, they were mortgagees in possession under a provision of the mortgage which authorized them in case of default to take all the property of the mortgagor into their possession through the trustee, and to operate the properties as a going concern for the purpose of preserving it as security, as was held in the former case (86 Kan. 860.) The indebtedness sued for was incurred while the mortgagees were in possession, and for the purpose of preserving the property as security for the bonds. The evidence shows that if the plant had been closed down absolutely the value of the security would have been materially lessened. It was necessary to keep portions of some of the plants operating and to keep fires under some of the retorts for the reason that if the fires were drawn the property would depreciate. The new company was organized as a holding company for the bondholders. It paid no consideration whatever for the purchase of the property at the sheriff's sale. Edwards and Nicholson had already purchased it on behalf of the bondholders, and the new corporation was formed to take the title. In this situation it seems clear that it would constitute a fraud on the rights of the particular creditors who had furnished supplies for the purpose of keeping the plant in operation, and to protect and preserve the security, if it were held that the same persons who incurred the indebtedness, although in the name of the old company, and who controlled and practically owned the property, and who merely changed from holding it as partners or bondholders to holding it in the capacity of

Coal Co. v. Nicholson.

*quasi* stockholders in the new corporation, could thereby avoid liability for such indebtedness. The new company was in fact nothing more than a continuation or reorganization of the old company, or of the interest in the old company acquired by the bondholders at the sale. In his testimony George L. Edwards speaks of the purpose of the new company being "to effect reorganization." In another letter to Cockerill he says that he hopes "to close the administration of these properties by the bondholders and enter without complication the new administration through foreclosure and reorganization."

In the case of *Flemming v. Light and Power Co.*, 90 Kan. 763, 136 Pac. 228, a corporation was organized by the officers of an investment company for the purpose of purchasing property and franchises of a gas-distributing company purchased at a sale under a mortgage owned by the investment company. No consideration was paid for the purchase of the property by the new company, except the interest its incorporators might own in the mortgage as shareholders in the investment company, and it was held that the new company, in carrying on the business first conducted by the mortgagor, and afterwards by the mortgagee, should be considered as an agent of the parent company in the purchase and operation of the plant. In *Altoona v. Richardson*, 81 Kan. 717, 106 Pac. 1025, it was held:

"Where one corporation becomes practically extinct, transferring all its assets to another and receiving in return stock in the other corporation, which succeeds to its business, the new corporation is liable, to the extent of the value of the property acquired, for the debts of the old one." (Syl.)

To the same effect see 5 Thompson on Corporations, 2d ed., § 6547. Sometimes in a like situation a court of equity considers the assets of the old company as a trust fund to be followed into the hands of one who is shown not to be a bona fide purchaser for a good

consideration. The same question frequently arises over the liability of a consolidated company for the debts of its predecessor. (*Berry v. K. C. Ft. S. & M. Rld. Co.*, 52 Kan. 759, 34 Pac. 805; *The Chicago and Indiana Coal Railway Company v. Hall*, 135 Ind. 91, 34 N. E. 704.)

In *Condenser Co. v. Electric Co.*, 87 Kan. 843, 126 Pac. 1087, it was ruled:

"Where a newly organized corporation succeeds to the business, property and assets of an established corporation without giving to the old corporation any means of discharging its obligation to a creditor, and all the circumstances of the transaction justify an inference that the new corporation is a mere continuance or reorganization of the former, with substantially the same stockholders, the new corporation is responsible for such debt of the former corporation." (Syl. ¶ 2.)

The opinion refers to *Austin v. Tecumseh Nat. Bank*, 49 Neb. 412, 68 N. W. 628, 35 L. R. A. 444. In that case the Nebraska court criticises the accuracy of the rule declared by Beach in his work on Private Corporations (vol. 1, § 360), to the effect that "where an old-established corporation sells out to a newly organized one, and turns over all its property, the new company becomes liable upon the debts and contracts of the old," and the court classifies the cases where the new company will be held liable, as follows: First, those in which the liability of the new corporation results, not from the operation of law, but from its contract relations with the old; second, cases in which the transfer of the property and franchises amounts to a fraud upon the creditors of the old corporation; and third, cases where, as in *Reed Bros. Co. v. First Nat. Bank of Weeping Water*, 46 Neb. 168, 64 N. W. 701, the circumstances connected with the creation of the new company and the manner in which it succeeds to the business and property of the old "are such as to raise the presumption or warrant the finding that it is a mere continuation of the former—that it is, in short, the same corporate body under a different name." (49 Neb. 419.)

We think the ruling of the trial court should be affirmed on either one of two grounds: First, that the transaction by which the property was transferred to the new company amounts to a fraud in law upon the plaintiff under the particular facts in this case; and second, that the circumstances surrounding the creation of the new corporation and its succession to the business and property of the old show conclusively that there was, in fact, no purchase, but simply a change in the capacity in which the business was conducted. The same persons who conducted the business as bondholders of the Cockerill Zinc Company in possession as mortgagees, changed from partners or bondholders to incorporators of the new company. The principles which govern in such a situation are well expounded by the supreme court of Ohio in *Andres v. Morgan, Trustee*, 62 Ohio St. 236, 56 N. E. 875, 78 Am. St. Rep. 712. There the change was from a partnership to a corporation which took all the property of the partnership, the partners transferring their individual interests to the new company in consideration for the transfer. It was held that such a transaction is not a sale of property from one to another, and the corporation could not retain the property and avoid the debts of the partnership. In the opinion it was said:

"All that the corporation paid for the property transferred to it was the stock issued in exchange—simply a metamorphosis of a partnership into a corporation, without any change of individuals, and unless it assumed the payment of the debts of the firm there was no consideration for the transfer of the property—for the stock without the property represented nothing and was worth nothing. That a corporation could be formed and with its capital purchase a partnership and its business without being liable for its debts unless expressly assumed is not doubted; but this is not such a case. This is like the case of *Reed Brothers Co. v. First Nat. Bank*, 46 Neb. 168, 64 N. W. 701. . . . Where there is a purchase in fact by a new company from an old one there is, as before observed, no liability of the new for the debts of the old company unless assumed as a part of the consideration. But where

a mere transformation is had—parties remaining the same, and the property is transferred by the members of the old company transferring their interest in it for an equal interest in it as property of the new, the transaction does not constitute a sale by the one and a purchase by the other; it is simply a change in the manner and form of carrying on the same business by the same persons; and brushing aside the fiction of a legal entity, it is seen that no real change has taken place, and that in looking to the new formation for payment the creditor looks to the same persons, possessed of the same property and rights, he contracted with in the first instance; and to construe the transaction as to creditors as a purchase tends to operate a fraud on their rights. Every purchase implies two distinct persons—a buyer and seller. It is a moral impossibility for one person to buy of or sell to himself. Modern decisions, as observed by Mr. Taylor (Taylor on Private Corporations, sec. 51), are tending to a disregard of the mental conception that a corporation is an entity separate from its corporators, as in many instances it is simply a 'stumbling block' in the way of doing justice between real persons." (pp. 244, 245.)

Cases are cited by the defendant which hold to the contrary, but we think their reasoning is based upon a slavish adherence to the conception of the new corporation as an entire separate entity from its incorporators, and by losing sight of the substantial facts and of the lawful rights of creditors. With much that was said in the opinion in *Armour v. E. Bement's Sons*, 123 Fed. 56, we agree. It was there said:

"The stockholders of an insolvent corporation are not bound to maintain the corporation in a hopeless struggle. The claims of creditors do not impose such an obligation, and public policy requires that they should be free to engage in new enterprises." (p. 59.)

It was also said in the opinion:

"They may do this, but they can not gain profit from the assets of the corporation, to the detriment of the lawful rights of creditors, any more than any other person may." (p. 59.)

Coal Co. v. Nicholson.

The decisions of this court indicate a tendency to disregard the theory of a corporation as an entity separate from its corporators where justice between the real parties to the transaction requires it. (*Berry v. K. C. Ft. S. & M. Rld. Co.,* 52 Kan. 759, 34 Pac. 805; *Altoona v. Richardson,* 81 Kan. 717, 106 Pac. 1025; *Trust Co. v. Zinc Co.,* 86 Kan. 860, 122 Pac. 875; *Condenser Co. v. Electric Co.,* 87 Kan. 843, 126 Pac. 1087; *Flemming v. Light and Power Co.,* 90 Kan. 763, 136 Pac. 228.)

Nor do we agree with the cases cited which hold that actual fraud or collusion must be shown before the assets in the hands of the new corporation can be followed by particular creditors. The doctrine may be true as to creditors generally, but the defendant can not invoke it because of the very necessity of the case and the obligation courts are under to prevent the failure of justice where it can be avoided by the application of equitable rules. We see no basis for a rational distinction in the principles which should control in the situation here and those applicable to a case where a private individual holding a mortgage on business property takes possession under the terms of his mortgage, conducts the business in the name of the mortgagor for a period of a year or two, incurs obligations, though in the name of the mortgagor, for material and supplies used for improvements which add to the value of the security, and then proceeds to foreclose his mortgage and purchase the property at foreclosure sale in the name of a third person who pays no consideration, credit being given upon the indebtedness for the price the property sells for. If in such a case he should seek to defeat the claims of creditors who furnished material and supplies used in the operation, management and control of the property and business while conducted by him, the courts would have no hesitation in rendering personal judgment against him upon the claims, nor in holding the assets as a trust fund liable for the satisfaction of

the judgment. In the present case the court gave personal judgment against Nicholson and the Kansas Zinc Company and ordered execution against the property of the new company. So much of the judgment must be affirmed.

There is a cross appeal in which the plaintiff claims the court erred in rendering judgment in defendant's favor on several causes of action founded on promissory notes given by the Cockerill Zinc Company for royalties on gas leases held by that company, which it is claimed the bondholders received the benefit of. The terms of the leases required the payment of the royalties in order to keep the leases in force. The periods for which the notes extended the term of the leases covered the time in which the property was controlled by the bondholders. The mortgage covered the leases, and they were sold under the decree and were acquired by the new company. They constituted part of the assets of the old and of the new company. We think these claims can not be distinguished in principle from those involved in the other causes of action, and the judgment will be modified with directions to render judgment upon those causes of action in favor of the plaintiff. In all other respects the judgment is affirmed.