DOUGLAS PRINTING COMPANY ET AL. V. LILLIE OVER ET AL.

FILED JUNE 3, 1903. No. 12,880.

1. **Corporation:** TRANSFER OF ASSETS: ACTION AT LAW BY CREDITOR. Where a debtor corporation transfers all of its assets to a new one, organized for the purpose of taking such assets and therewith continuing the business in which the former corporation was

engaged, and no provision is made for payment of its debts and it ceases to do business, one holding a judgment against the old corporation may bring an action at law against the new one, and a finding in his favor by the trial court will not be disturbed, when the evidence shows that the circumstances attending the creation of the new corporation, and its succession to the business and property of the old, are of such a character as to warrant the finding that the new corporation is a mere continuation of the old one.

2. **Evidence.** Evidence examined, and *held* ample to support the finding and judgment of the trial court under the above rule.

ERROR to the district court for Douglas county: JACOB FAWCETT, DISTRICT JUDGE. *Affirmed.*

*E. C. Hodder,* for plaintiffs in error.

*Lysle I. Abbott, contra.*

GLANVILLE, C.

The plaintiffs in error prosecute this proceeding in error, asking the reversal of a judgment rendered against them by the district court for Douglas county.

It sufficiently appears in the evidence, and is conceded, that Douglas Printing Company and Douglas-Watters Company is in fact the same concern, without reorganization, but simply with a change in name. To prevent confusion of names in the discussion of this case, we will call the plaintiff in error company, the new company, and the company designated in the pleadings and evidence as The Douglas Printing Company, the old company.

Defendants in error recovered a judgment against the old company, and after return of execution unsatisfied, brought this action against the plaintiffs in error, and in their petition allege as follows:

"Plaintiffs further allege that on or about the 12th day of September, 1898, the defendant, the Douglas-Watters Co., a corporation, was organized under the laws of the State of Nebraska, and that the stockholders of the said, The Douglas Printing Company, became and were the

24

stockholders and organizers of the defendant, Douglas-Watters Co., and that the said defendant, Douglas-Watters Co., thereupon took possession of all the property, assets, emoluments, business and good will of the said, The Douglas Printing Co., and assumed all debts and liabilities of the said, The Douglas Printing Co., and that the said Douglas-Watters Co. did not become the *bona fide* purchaser and holder of the rights and property of the said, The Douglas Printing Company, but that said transfer was, in truth and in fact, and in law, fraudulent and void, as to the creditors of the said, The Douglas Printing Company, and was made for the purpose of hindering, delaying and defrauding the creditors of the said, The Douglas Printing Company, and preventing them from collecting their just claims against said corporation.

"That the said Douglas-Watters Co. was in truth and in fact merely a continuation of the said, The Douglas Printing Co., and was the successor of the said, The Douglas Printing Co., in conducting, managing and carrying on the same business in the same plant.

"Plaintiffs further allege that said defendants, Douglas Printing Co. and Douglas-Watters Co., as hereinbefore set forth and by reason of the transfer hereinbefore described, have assumed the said claims of these plaintiffs against the said, The Douglas Printing Co., and are now liable therefor and that there is now due this plaintiff from said defendants upon said judgment the sum of $318.72, with interest at 7 per cent. per annum, from the 25th day of June, A. D. 1901."

The action was tried to the court without a jury, and the court found generally for the defendants in error, and rendered judgment against the plaintiffs in error for the amount involved.

A motion for a new trial was filed and overruled and a petition in error filed in this court containing the following assignments:

1. The finding of the court is not sustained by sufficient evidence.

2. The finding of the court is contrary to law.

3. That the district court erred in overruling the motion for new trial.

The only inquiry we are authorized to make upon the record is whether or not there is sufficient evidence to sustain the finding and judgment of the trial court, under the well known rule established by the decisions of this court, sustaining such findings unless clearly wrong.

It sufficiently appears in the evidence that John Douglas was the moving spirit in all the corporations affected by the proceedings. He held one-third of the stock in the old company, and also in the new one, and he gave the names to the corporations. He was called as a witness, as was also John Pendray, who also owned one-third of the stock of the old company, and from their evidence it appears, with reasonable certainty, that all of the property that belonged to the old company found its way into the new one. That the three parties, John Douglas, John Pendray and one Charles Hammond, each owned one-third of the stock of the old company; that the old company became somewhat embarrassed and the business was not prospering. A transaction took place which is testified to by the witness Pendray, as follows:

Q. State what you know about any change in the assets of the company.

A. After they had held several consultations on the matter it was decided to transfer all the stock to Mr. Douglas and let him wind up the business of The Douglas Printing Company, get in all the outside obligations, collect all the accounts that were due.

Q. Why was that done?

A. Because we were not satisfied with the profits of the business. We were dissatisfied with the plant or business and were unable to increase it, and get out from under the obligations.  *  *  *

Q. What did he do?

A. He wound up the business affairs, paid all the outstanding obligations we knew of, he and I consulted and

straightened up the affairs with the Carpenter Paper Com-
pany, *who owned the books and obligations and held a
mortgage.* They didn't foreclose it, because we turned over
the place to them. All the small accounts were paid, every-
thing was paid that I have any knowledge of.

The testimony of Mr. Douglas is in part as follows:

Q. The other stockholders in The Douglas Printing Com-
pany transferred their one-third to James H. Watters and
Alexander Watters?

A. No sir.

Q. What did they do with theirs?

A. They transferred it to me as trustee.

Q. They transferred it all to you as trustee?

A. Yes sir.

Q. What did you do with it?

A. I turned it over to the Carpenter Paper Company.

Q. What did you turn it over to the Carpenter Paper
Company for?

A. They had a mortgage on the plant and have taken
the whole thing in.

Q. What did the Carpenter Paper Company do with the
stuff that was turned over to them?

A. They turned it over to Douglas-Watters Company.

It further appears from the testimony that the new
company gave to the Carpenter Paper Company a new
mortgage for all the indebtedness of the old company to the
mortgagee in the sum of $2,000.

In what manner James H. and Alexander Watters
obtained or paid for the stock in the new company, nowhere
appears in the evidence. Mr. Douglas claimed to have an
account with a certain bank as trustee, and intimates that
money collected by him as trustee, after the assignment to
him in trust of the stock of his associates in the old com-
pany, was in that fund, and that a certain payment made
upon the claim of the defendant in error, after the organi-
zation of the new company, was by check against that fund.
The check is in evidence, and was signed, "John Douglas,
Mgr.," and it appears from the evidence of Mr. Pendray,

that the Carpenter Paper Company had all the books and obligations of the old concern, and it further appears that upon the new concern giving a mortgage to the Carpente · Paper Company for its entire claim, whatever it had of th-- assets of the old company were turned over to the new one.

It is clearly shown that the mortgage given to the Carpenter Paper Company by the old concern was never foreclosed, but it is claimed that in some manner all the assets of the old company were turned over to it, and then as the witnesses expressed it, were turned over to the new concern.

This question was asked by Mr. Hodder, attorney for plaintiffs in error, of the witness Douglas:

"Referring to the matter, you say the assets of the Douglas Printing Company were assigned to the Carpenter Paper Company. I will ask you to state whether or not they released the indebtedness, or state the facts as you now remember them with reference to that."

A. They released the mortgage on The Douglas Printing Company, and took a new one on the Douglas-Watters Company. That is the way I understand it.

It is clearly established that after the completion of these turning over processes, whatever they were, that a bill of sale was made by the old, The Douglas Printing Company, for the named consideration of $5,000, conveying all the stock and good will of the business of the old company, including its personal property therein mentioned to the new company.

This bill of sale contains the following paragraph, with all the blanks in the printed matter carefully filled:

"And we hereby covenant with the grantee herein, that we are the lawful owners of said goods, chattels and personal property; that they are in our possession; that they are free from all incumbrances; that we have good right to sell the same as aforesaid, and that we will warrant and defend the same against the lawful claims and demands of all persons."

In reference to the giving of this bill of sale, the witness Douglas testified as follows:

Q. Then how does it come that you executed this bill of sale?

A. Why I don't know how it came, but that was executed some weeks later. The Watters brothers had the other interests; that didn't seem to suit them; they thought probably that the stockholders of The Douglas Printing Company thought they might use them, or something. They wanted to get a quitclaim deed; that was why it was made.

And again he testified: "At the time of the first meeting of the board of directors of Douglas-Watters Company, the Watters brothers were not just exactly satisfied and their attorneys drew up this paper and asked us to sign it; that is all there was to it; they wanted a quitclaim deed."

The witness Pendray in reference to the same matter stated in answer to a question:

"Substantially as Mr. Douglas has stated, that he called me in, brought it to me and asked that we should sign it. Their attorney wanted it signed in order that there might be no future trouble about the affairs of the old, The Douglas Printing Company, conflicting with the Douglas Watters Company. I signed it under that consideration."

This took place after the turning over of the assets to the new company as testified to.

We have said that Mr. Douglas appeared to be the leading spirit in these corporations. On the witness stand he testified as follows:

Q. What position did you hold with Douglas-Watters Company?

A. I was foreman of the mechanical department, also president of the company.

Again this question: "What position did you occupy with Douglas-Watters Company?"

A. I was foreman of the composing room, also treasurer of the company.

We think the evidence fairly discloses that what was done by the changes made is that Pendray and Hammond dropped out of the business and the Watters brothers

came in as their successors.  It is noticed that although a trial in the county court resulted in a judgment against plaintiffs in error, yet on appeal, no one connected with the new concern appeared as a witness except Mr. Douglas. Neither of the Watters brothers came to explain the transaction by which they got an interest in the business, and it is evident that Pendray expected all the debts were to be taken care of, and that his transfer of his interest to Douglas was with that understanding.  The turning over process from Pendray and Hammond of their stock to Douglas, from Douglas to the Carpenter Paper Company, carrying the stock according to his evidence, and from that company back to the new company, are vague and indefinite transactions.  We think the circumstances attending the creation of the new company, and its succession to the business and property of the old one, are of such a character as to warrant the finding that this new concern is a mere continuance of the old one.

In *Hibernia Ins. Co. v. St. Louis & New Orleans Transportation Co.*, 13 Fed. 516, it is held:

"Equity will not permit the stockholders in one corporation to organize another, and transfer all the corporate property of the former to the latter, without paying all the corporate debts."  In the opinion it is said by McCrary, C. J.:

"It (the old company) ceases to transact business.  Its stockholders organize themselves into another corporation, and all the property is transferred from the old to the new. It matters not that the stockholders in the two companies may not be precisely identical.  We are not prepared to say that it would make any difference if the members of the new company were none of them interested in the old. The thing which we pronounce unconscionable is an arrangement by which one corporation takes from another all its property, deprives it of the means of paying its debts, enables it to dissolve its corporate existence and places itself practically beyond the reach of creditors, and this without assuming its liability."

In the concurring opinion of Treat, D. J., it is said:

"It is the duty of the court to examine the whole transaction, and to cut through mere paper transfers designed to obstruct or destroy the rights of parties."

In *Austin v. Tecumseh Nat. Bank*, 49 Neb. 412, this court held:

"In order to render a newly organized corporation liable at common law for the debts of an established corporation or firm to whose business and property it has succeeded, it should, in the absence of a special agreement, affirmatively appear from the pleadings and the proofs that the action in question is fraudulent as to creditors of the old corporation, or that the circumstances attending the creation of the new and its succession to the business and property of the old corporation are of such character as to warrant the finding that it is a mere continuation of the former."

In *Reed Bros. Co. v. First Nat. Bank of Weeping Water*, 46 Neb. 168, it is held:

"Where a partnership engaged in a general mercantile business, in straitened and failing circumstances, incorporated, and the assets and business of the partnership were transferred or assigned to the corporation and appropriated to its objects and purposes, the business of the partnership being continued by the corporation, the corporation was presumptively liable for the partnership debts."

In *Campbell v. Farmers & Merchants Bank of Elk Creek*, 49 Neb. 143, it is held:

"The purchase of part of the assets of a copartnership or corporation by a new corporation, organized by the members of the old corporation or copartnership, does not raise a conclusive presumption against the new corporation that by its purchase it assumed or became liable for the debts of the old corporation or copartnership, notwithstanding the fact that the new corporation engaged in and continued to carry on the business in which the old corporation or copartnership had been engaged. Such facts at most raise a rebuttable presumption that the new corpora-

tion assumed the liabilities of the old corporation or co-partnership."

We are clearly of the opinion that the evidence contained in the bill of exceptions sustains the finding of the trial court, and recommend that its judgment be affirmed.

BARNES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the trial court is

AFFIRMED.