## Staunton

### J. S. ASHWORTH v. THE HAGAN ESTATES, INCORPORATED, ET ALS.

September 19, 1935.

Present, Campbell, C. J., and Holt, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*William A. Stuart,* for the appellant.

*Bradley Roberts* and *Robert L. Pennington,* for the appellees.

HOLT, J., delivered the opinion of the court.

J. S. Ashworth filed his bill to the First January Rules, 1930, of the Circuit Court of Scott county. In it he set out the facts that he is a creditor of The Hagan Trustee Syndicate, and that said Syndicate on the nineteenth day of April, 1928, made a voluntary conveyance of all of its property to the Hagan Estates Inc., the effect of which it is claimed was to hinder, delay and defraud him and other creditors of this Trustee Syndicate. On April 26, 1930, he filed an amended bill in which he made the Clinch River Coal Company, Inc., lessee of the Hagan Estates, Inc., a party. Preference is claimed under Code, section 5186, as amended by Acts 1926, Ch. 524.

This suit for satisfactory reasons was afterwards transferred to the Corporation Court for the city of Bristol. That court on October 12, 1933, entered this decree:

"These causes were heretofore heard on the merits on the pleadings, issues and depositions as set out in the

agreed decree entered herein under date of September 15, 1933, and the court having now maturely considered the same is of opinion that the deed of The Hagan Trustee Syndicate to the Hagan Estates, Incorporated, dated April 19, 1928, and attacked herein by complainant, J. S. Ashworth, in his original and amended bills, is neither fraudulent or voluntary as to said complainant's claim, and doth so ADJUDGE, ORDER and DECREE.

"The court is further of opinion under the proof and under the admissions of the Hagan Estates, Incorporated, that the alleged judgment of J. S. Ashworth against the Hagan Trustee Syndicate for $6,000.00 with interest from October 7, 1929, rendered February 10, 1930, as the result of an agreement shown in evidence, should be treated as a common claim against the property of The Hagan Estates, Incorporated, and that the commissioners taking the account herein should be governed accordingly, and doth so ADJUDGE, ORDER and DECREE."

The Hagan Trustee Syndicate was created by "an agreement and declaration of trust" of date December 1, 1920. Charles F. Hagan, Patrick Hagan, Eugenia Hagan Curran and Rosalie B. Hagan were the owners of twenty-five or thirty thousand acres of land lying in Scott, Wise and Dickenson counties, valuable for its coal and timber, and estimated to be worth something more than half million dollars. Under said declaration of trust these owners together with Robert L. Pennington were named as constituting the first Board of Trustees. This Board was given power to care for, manage, lease, dispose of, etc., the property which they took for the benefit of their *cestuis que trustent*, free however from personal liability on the part of themselves or those beneficially interested, this under these provisions of said declaration:

"The trustees shall have no power to bind the beneficiaries personally or to call upon them for the payment of any sum of money or any assessment whatever. All persons or corporations extending credit, contracting with, or having any claim against the trustees shall look

only to the funds and property of the trust for the payment of any such contract or claim or for the payment of any debt, damage, judgment or decree, or of any money that may otherwise become due or payable to them from the trustees so that neither the trustees, beneficiaries, nor officers, present or future, shall be personally liable therefor."

Trusts of this kind are not common in Virginia. Although they are elsewhere in more general use and in many States are regulated by statute. These syndicates are not trusts in any narrow sense, but are devices adopted for the conduct of general business, and at times those things may lawfully be done which no prudent trustee would venture to do. Trustees take the place of directors while those beneficially interested may be likened to stockholders, although this analogy is by no means perfect. Their object "apparently was to obtain for the associates most of the advantages belonging to corporations, without the authority of any legislative act, and with freedom from restrictions and regulations imposed by law upon corporations." *Hussey* v. *Arnold* (1904), 185 Mass. 202, 70 N. E. 87. See also, Cook on Corporations (6th Ed.), section 622h.

This Syndicate by deed of date April 19, 1928, conveyed its entire holdings to the Hagan Estates, Inc. The consideration therefor was "the sum of ten ($10.00) dollars and other good and valuable consideration, paid and to be paid by said party of the first part to said party of the second part, receipt of which is hereby acknowledged." The conveyance itself was one with covenants of general warranty.

On May 1, 1928, the Corporation which had acquired all of the rights of the Syndicate, leased its coal land underlying Powell Mountain in the counties of Scott and Wise, to the Clinch River Coal Company, Inc. The lessee was not successful and that lease appears to have been forfeited or abandoned.

Mr. Ashworth had been counsel for the Syndicate and

it was then indebted to him for his services, his claim being for something over nine thousand dollars, and on it he brought an action in the Circuit Court of Washington county.

In September 1928 the Corporation brought suit in the Circuit Court of Scott county, in which it set out the difficulties under which it had labored and asked that receivers be appointed for the purpose of protecting and preserving its property, that all creditors of the Syndicate and of the Corporation be enjoined and prohibited from instituting and procuring judgment on their claims and that they be required to file them before a Master Commissioner appointed for that purpose.

On September 15, 1928, Charles F. Hagan, Robert L. Pennington and Robert W. Kelly were appointed receivers, both for the Syndicate and for the Corporation. Creditors of these concerns were enjoined from instituting or prosecuting suits against them and a commissioner was appointed to make report of their indebtedness. Sometime later this suit was dismissed possibly for want of jurisdiction.

Prior to dismissal, however, Ashworth and other creditors of the Syndicate on November 7, 1928, filed their petition for involuntary bankruptcy in the United States District Court for the Western District of Virginia. This bankruptcy proceeding was by consent dismissed on December 12, 1929.

There is some controversy as to the terms on which it was done. With Mr. Stant's deposition is filed this agreement:

"It is agreed this October 7, 1929, between R. L. Pennington and D. T. Stant attorneys for The Hagan Trustee Syndicate and Wm. A. Stuart attorney for J. S. Ashworth, that the pending involuntary bankruptcy proceeding under the style of The Hagan Trustee Syndicate, alleged bankrupt, J. S. Ashworth will join in moving the court to dismiss the said proceeding. It is further agreed that the amount owing to said Ashworth by said The Hagan trus-

tee Syndicate is $6,000.00 with interest from the seventh day of October 1929. Said The Hagan Trustee Syndicate will as speedily as may be cause a friendly receivership suit to be instituted in the Circuit Court of Scott county and will petition therein for the appointment of receivers for the property of said The Hagan Trustee Syndicate. Upon the appointment of such receivers said Ashworth shall take agreed judgment for the above amount in the present action pending in the Circuit Court of Washington county, Virginia, and may thereafter file his claim for said amount in such receivership proceeding and said claim shall not be contested.

"All the above agreement is in compromise of said present bankruptcy proceeding, and shall be void unless said proceeding is dismissed as above contemplated.

R. L. PENNINGTON,
DONALD T. STANT,
W. A. STUART."

Plaintiff claims that he made certain objections to this compromise agreement when it was submitted to him and that it reads in final form thus:

"It is further agreed, this October 7, 1929, between R. L. Pennington, and D. T. Stant, attorneys for The Hagan Trustee Syndicate and for The Hagan Estates, Incorporated, and Wm. A. Stuart, attorney for J. S. Ashworth, that in the pending involuntary bankruptcy proceeding under the style of The Hagan Trustee Syndicate, alleged bankrupt, J. S. Ashworth will join in moving the court to dismiss the said proceeding. It is further agreed that the amount owing to said Ashworth by said The Hagan Trustee Syndicate is six thousand dollars ($6,000.00) with interest from the seventh day of October 1929. Said The Hagan Trustee Syndicate will, as speedily as may be, and within thirty days from the date of such dismissal of said bankruptcy proceeding, cause a receivership suit to be instituted in the Circuit Court of Scott county, to which suit The Hagan Estates, Incorporated, shall be a party,

and said court shall be petitioned therein for the appointment of a receiver or receivers for the property of said The Hagan Trustee Syndicate and said The Hagan Estates, Incorporated, and said The Hagan Estates, Incorporated, shall file a pleading therein acknowledging that it holds all the property heretofore conveyed to it by said The Hagan Trustee Syndicate as a trustee for the creditors of said The Hagan Trustee Syndicate, as heretofore acknowledged by said The Hagan Estates, Incorporated, in its bill filed in the Circuit Court of Scott county in the receivership suit heretofore pending in said court under the style of The Hagan Estates, Incorporated, vs. The Hagan Trustee Syndicate et al. Upon the institution of such receivership suit, said Ashworth may take judgment for the above amount in his present action pending in the Circuit Court of Washington county, Virginia, and may thereafter file his claim for said amount in such receivership proceeding and said claim shall not be contested.

"All the above agreement is in compromise of said present bankruptcy proceeding and shall be void unless said proceeding shall be dismissed as above contemplated."

We believe that this last named agreement was the one actually adopted.

The bankruptcy proceeding was dismissed on December 12, 1929. Early in January, 1930, but after this suit was begun, C. S. Carter, Nannie D. Hagan and Eugenia Hagan Curran, suing on behalf of themselves and others who might see fit to come in, instituted a general creditors' suit in the Circuit Court of Scott county against both the Syndicate and the Corporation. Mr. Pennington, who was general counsel for the Syndicate and for the Corporation, was counsel in this cause, and no doubt was undertaking to carry out the compromise agreement of October 7, 1929. In their bill is this statement:

"Your orators allege that the said conveyance by The Hagan Trustee Syndicate was upon the consideration that the said Hagan Estates Incorporated was made subject to

the debts of the Hagan Trustee Syndicate, and while the consideration was not expressed in the deed, The Hagan Estates, Incorporated, has always admitted that it took said land subject to all the debts of the Syndicate, and alleges that the said Hagan Estates, Incorporated, has filed in sundry judicial proceedings pleadings admitting that it took said properties subject to the debts and obligations of the Hagan Trustee Syndicate, and to the extent of the valid indebtedness against The Hagan Trustee Syndicate. Your orators allege that the said Hagan Estates, Incorporated, stands in the relation of trustee."

In this Carter suit on September 20, 1930, R. W. Kelly was appointed receiver for the Syndicate and for the Corporation. Creditors were enjoined from bringing separate suits and it was referred to a Master Commissioner to take account of debts, etc. In the meantime and on February 10, 1930, in accordance with the agreement noted, judgment was entered in favor of Ashworth against the Syndicate in the sum of $6,000.00.

The instant case as we have seen was brought to the First January Rules, 1930, of the Circuit Court of Scott county.

All of this litigation was transferred to the Corporation Court of Bristol, and on September 20, 1932, the Ashworth suit and the Carter suit were brought on to be heard together and the Master Commissioner appointed in the Carter suit was in addition to a matter theretofore referred to him directed to report upon the Ashworth judgment.

The affairs of the Syndicate did not prosper. Taxes were unpaid and debts had accumulated. To carry on it was necessary to borrow money. Application was made to the Grace Securities Company of Richmond. Due to the fact that these declarations of trust were not common in Virginia, this company was of opinion that it would be difficult to float bonds, issued by such a trust, and said that a corporation should be chartered that business might be done through it. This corporation was chartered and all of the assets of the trust were transferred to it. For

reasons which we need not go into, the attempt to borrow money failed. In these circumstances it may readily be conceded that those involved should be absolved from any suggestion of a sinister purpose.

We have seen that the conveyance from the Syndicate to the Corporation was in "consideration of the sum of ten ($10.00) dollars and other good and valuable consideration."

■ Generally speaking, no one questions the right of those interested to show by oral evidence just what the considerations which support a deed are, but it is contended that this rule can not be applied in the instant case because the promise is to pay the debt of another, which promise, unless in writing, is forbidden by our statute of frauds. Code, section 5561. Fourth. The promise here, however, was not merely to pay the debt of another, but it was a promise by the Corporation to pay its own debt, that is to say, it was a promise to pay as part of the purchase price the outstanding debts of the Syndicate which is assumed and agreed to pay. *Skinker* v. *Armstrong*, 86 Va. 1011, 11 S. E. 977; 27 C. J., page 163.

It is true that in the bill filed by The Hagan Estates, Inc., and later dismissed, this statement appears:

"The complainant, The Hagan Estates, Incorporated, did not assume the payment of the debts of The Hagan Trustee Syndicate, but it believes in all fairness to the creditors of the estate that your complainant should administer the estate conveyed to it in the relation of a trustee, first, to pay all the debts and obligations of The Hagan Trustee Syndicate."

But from the testimony now before us it is made to appear that there was such an assumption.

Whatever may have been the consideration this Corporation was charged with actual knowledge of these facts. It knew that the Syndicate was indebted and it knew that it was divesting itself of all of its property, and it should have known that this *quoad* these creditors it could not do.

In *People's National Bank* v. *Morris,* 152 Va. 814, 148 S. E. 828, 829, we quoted with approval this statement of the law from *Williams* v. *Commercial National Bank,* 49 Or. 492, 90 Pac. 1012, 91 Pac. 443, 11 L. R. A. (N. S.) 857: "The authorities seem to be uniform to the effect that the assets of the corporation are subject to an equitable lien in favor of the creditors, and that such creditors may follow such assets, or the proceeds thereof, into whatsoever hands they can trace them and subject them to such debts, except as against a bona fide purchaser for value. And where a corporation transfers all its assets to another corporation with a view of going out of business, and nothing is left with which to pay its debts, such transferee is charged with notice by the very circumstance of the transaction, and takes the same cum onere. Such a case cannot be considered a sale in the due course of business even though based on a valuable consideration, as it operates as a fraud against the creditors."

"Of course a corporation holds its property subject to the payment of the corporate debts, and when a corporation sells or transfers its entire property to a purchaser, knowing the fact, the latter is chargeable with knowledge that the property is subject to the corporate debts, and that equity will in proper cases, allow the corporate creditors to follow the property into the hands of the purchaser for satisfaction of their claims." 7 R. C. L., page 573. See also, Cook on Corporations (6th Ed.), secs. 672, 673, vol. 2; *Barber* v. *Morgan,* 89 Conn. 583, 94 Atl. 984, Ann. Cas. 1916E, 102; *Baker Motor Vehicle Co.* v. *Hunter* (C. C. A.), 238 Fed. 894-898; *Cole* v. *Millerton Iron Co.,* 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615; *Lowther* v. *Lowther-Kaufmann Oil & Coal Co.,* 75 W. Va. 171, 83 S. E. 49.

The case of *Cole* v. *Millerton Iron Company* is quite instructive. The plaintiff, a creditor of the National Mining Company, had brought an action to recover damages. During its pendency the debtor corporation transferred all of its assets to the Millerton Iron Company "upon a

nominal consideration except an assumption by the vendee of the debts of the vendor." The court said:

"The assets of a corporation are a trust fund for the payment of its debts, upon which the creditors have an equitable lien, both as against the stockholders and all transferees, except those purchasing in good faith and for value: *Bartlett* v. *Drew,* 57 N. Y. 587; *Brum* v. *Merchants' Mut. Ins. Co.* (C. C.), 16 Fed. (140), 143; Morawetz on Corporations, section 791. The Millerton Company was not such a purchaser."

It further said that the situation was not changed, because the stockholders and officers of the National Company and of the Millerton Company were the same, and that,

"Neither is it an answer to say that the creditor is not harmed by a change of the party liable to pay, unless there be some disproportion in the assets. He cannot be forced to change his debtor against his will, * * *."

 Good intentions will not validate an unlawful transaction. This transfer was in fraud of the rights of the Syndicate's creditors. Its net effect has been to delay Mr. Ashworth for seven years, a time long enough to try the patience of Jacob, who served long for Rachel.

 Neither a corporation nor a trust of the character of that in judgment can divest itself of its property and leave its creditors in the vocative, and a grantee corporation with knowledge of such facts, holds subject to every right of the transferor's creditors.

It is further contended that even if the conclusions which we have reached are in principle sound, they can not be applied here, that Ashworth bartered his rights under the compromise agreement of October 7, 1929.

It is true that under that agreement Ashworth took judgment on February 10, 1930, for $6,000.00, but it was against the Hagan Trustee Syndicate. By it his claim was reduced from $9,000.00 to $6,000.00, and this last sum was the amount agreed upon. But beyond this it was an idle gesture. It was a judgment against an entity which for all

practical purposes had ceased to exist. The Corporation and the Syndicate in consideration of the dismissal of the proceedings in bankruptcy, agreed that they held and would hold this property in trust for the creditors of the Syndicate. All of this was on October 7, 1929, and yet on October 22, 1929, the Corporation conveyed a valuable part of its holdings to J. F. Sargent, trustee, in trust to secure about $10,000.00 Syndicate indebtedness.

■ Of course a corporation may prefer its creditors except in a general deed of assignment, provided it acts in good faith and with no fraudulent intent. *Beck* v. *Semones' Adm'r,* 145 Va. 429, 134 S. E. 677. But a trustee who holds for their common benefit can not discriminate between them. The Corporation acknowledged that it did so hold and therefore broke faith in the deed to Sargent. Ashworth had no assurance that other attempts at discrimination might not be made, and so he was well within his rights in bringing suit as he did and in claiming under Code, sec. 5186, as amended by Acts 1926, Ch. 524.

We shall not undertake to pass upon the rights secured under the Sargent Trustee deed, nor upon those secured under trust deed to Robert L. Pennington of date September 3, 1928. Creditors of the Syndicate were also there secured.

These parties are not before the court.

It is earnestly contended that the appeal and appeal bond come in late, certainly they are not within six months of the date of the decree appealed from—October 12, 1933. If that decree is a final decree then this contention is sound, Code, section 6336, section 6337, as amended by Acts 1922, Ch. 41, and section 6355, as amended by Acts 1926, Ch. 10. But if it is not a final decree that statute does not apply.

■ Appealable decrees are of two kinds—interlocutory decrees, which settle the principles of a cause; and final decrees which leave nothing to be done save such ministerial acts as may be necessary to complete their enforcement.

"The decree is not appealable unless it be a final decree or one that adjudicated the principles of the cause. Code, section 6336. A final decree is a decree which terminates the suit or definitely determines the rights of the parties, and leaves nothing further to be done by the court in the cause, though it may still enter such decrees and orders as may be necessary to carry the decree into execution. *Brown* v. *Carolina, Clinchfield & Ohio Ry. Co.*, 116 Va. (597), 599, 83 S. E. 981.

"In *Sims* v. *Sims*, 94 Va. (580), 581, 27 S. E. (436), 437, 64 Am. St. Rep. 772, the court, speaking through Judge Riely, said: 'According to the uniform decisions of this court, a decree which disposes of the whole subject, gives all the relief that is contemplated, and leaves nothing to be done by the court, is regarded as final; and on the other hand, every decree which leaves anything to be done by the court in the cause is interlocutory as between the parties remaining in court. *Cocke's Adm'r* v. *Gilpin*, 1 Rob. (40 Va.) 20; *Ryan's Adm'r* v. *McLeod, et al*, 32 Gratt. (73 Va.) 367; *Rawlings' Ex'r* v. *Rawlings, et al*, 75 Va. 76; and *Wright* v. *Strother*, 76 Va. 857.'" *Lee* v. *Lee*, 142 Va. 244, 128 S. E. 524, 526; *Richardson* v. *Gardner*, 128 Va. 676, 105 S. E. 225; *Repass* v. *Moore*, 96 Va. 147, 30 S. E. 458.

Plainly this decree is not final. Ashworth's debt is held to be a common claim. Assuming that that conclusion is sound it is still necessary that the amount of other common claims be ascertained, and it is further necessary that the amount of preferred claims, if any, be stated. Not until this is known would it be possible to determine just what this plaintiff might hope to get. Preferred claims might make his worthless and common claims might so mount up as to make it of little value. The decree of reference must be executed, the liens on this real estate ascertained, and it must be sold to some solvent purchaser before anything approaching a finality can be reached in this somewhat involved litigation.

There is no merit in the motion to dismiss.

■ The decree appealed from is reversed. J. S. Ashworth is entitled to have his debt established as a preferred claim against the property of the defendant corporation under the Code provisions of section 5186, as amended by Acts 1926, Ch. 524, subject to such prior preferences, if any, as may hereafter be proven, by claimants who are or are not now before the court.

*Reversed.*