No. 33,909

Lulu Avery, *Appellee*, v. The Safeway Cab, Transfer & Storage Company, *Appellant*.

(80 P. 2d 1099)

Opinion filed July 9, 1938.

*C. A. Matson, I. H. Stearns* and *E. P. Villepigue,* all of Wichita, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action by plaintiff, who held a judgment against a defunct corporation to subject its corporate successor to liability for the satisfaction thereof.

The pertinent facts were developed without dispute. On March 17, 1935, plaintiff sustained personal injuries in a taxicab operated by the Peoples Taxicab Company, a corporation, in Wichita. On July 20, 1935, she commenced an action against that company for damages. The same day its entire assets, including its municipal licenses, office equipment and good will, were taken over by the Safeway Cab, Transfer & Storage Company, and the Peoples Taxicab Company ceased to do business. For convenience we will name these companies as the Peoples and the Safeway. The personnel of the stockholders, directors and officers, with a single exception, was identical in the two companies.

The minutes of the two companies recited the facts of the transfer of the assets and that the Peoples company owed a considerable sum to the city of Wichita for license fees; and it was agreed that the Safeway company or its officers would pay that indebtedness to the city. No provision was made for the payment of any other obligations of the Peoples company, but the Safeway company did in fact pay all the other obligations of the Peoples company to an aggregate sum of $3,525.07. No arrangement between the companies was made for the defense of the pending action brought by plaintiff against the Peoples company, but it appears that the parties to the transfer believed that any judgment plaintiff might secure would be paid by an insurance carrier. In the negotiations stated above there was no attempt to conform to any provision of statute governing the merger of corporations, nor for the winding up of the affairs of the Peoples company. Its summary dissolution was effected in December, 1935, by the simple expedient of not filing its annual report to the secretary of state in conformity with G. S. 1935, 17-701, which automatically caused a forfeiture of its charter. (G. S. 1935, 17-706.)

On December 19, 1936, plaintiff's action for damages against the Peoples company proceeded to judgment for $1,500 in her favor. That judgment was not paid, and plaintiff brought this action against the Safeway company, pleading the pertinent facts as summarized above. In its answer, defendant admitted that it had taken

over all the assets of the Peoples company, but that at the time of the transfer plaintiff's claim was not then a valid and subsisting indebtedness, and that the entire assets of the Peoples company which had been transferred to the answering defendant did not exceed the value of the obligations assumed and paid by the defendant; and that it was a separate, distinct corporation and not indebted to plaintiff.

When the cause came on for trial, counsel for the parties made extended opening statements. Counsel for plaintiff then moved for judgment on the pleadings and statements and admissions of counsel. Before ruling on this motion the trial court questioned counsel for the parties at length, and eventually sustained plaintiff's motion and gave judgment in her favor.

Defendant appeals, objecting to the net result. It contends that the Safeway company was only liable for the debts of the Peoples company to the extent of the value of the assets it received from that company; and it asserts that it has already paid out more money in satisfaction of the obligations of the Peoples company than the total value of the assets transferred to appellant. On this point it cites *Altoona v. Richardson*, 81 Kan. 717, 106 Pac. 1025, where it was held that—

"Where one corporation becomes practically extinct, transferring all its assets to another and receiving in return stock in the other corporation, which succeeds to its business, the new corporation is liable, to the extent of the value of the property acquired, for the debts of the old one." (Syl.)

A careful reading of the opinion in that case, however, will show that this court was not setting the maximum limit of liability of a corporation which takes over the entire assets of another corporation under such circumstances as were conceded to exist in the case at bar. Here the negotiators for the Peoples company and the Safeway company were identical. There was not a formal sale of the assets of the Peoples at a fixed price to the Safeway. The transfer of assets was prompted by the mere fact that the Peoples company was not in good standing with the city because it was delinquent in the payment of its license fees. And since the personnel of the two companies was practically identical, the most practical way—if not the only one—the Safeway company could get a license to operate its taxicabs and other vehicles in Wichita was to take over the licenses of the Peoples company and pay up the latter's delinquencies thereon. No formal arrangements were made to care for

the other debts of the Peoples company, yet the negotiators deliberately disabled it from any possible further exercise of its corporate functions. Sometimes this sort of conduct on the part of corporations, whereby one acquires all the assets of another, is characterized as fraudulent. But it may not be intentionally so; perhaps no intentional fraud inhered in this transfer. But where the transfer of assets strips a debtor corporation of all its assets, and disables the corporation from earning money to pay its debts, thus leaving creditors and holders of claims no resources to which they may look for the payment of their due, the net result is in legal effect a fraud; and the courts will subject the transferee to liability for the satisfaction of claims against the corporation whose assets it has absorbed. The law books go into painstaking details in respect to merger, absorption, amalgamation, and consolidation of corporations, and in some of our own cases we have written at length on related phases of the same subject. (*Berry v. K. C., Ft. S. & M. Rld. Co.*, 52 Kan. 759, 34 Pac. 805; *Condenser Co. v. Electric Co.*, 87 Kan. 843, 126 Pac. 1087; *Flemming v. Light and Power Co.*, 90 Kan. 763, 136 Pac. 228; *Coal Co. v. Nicholson*, 93 Kan. 638, 152 Pac. 763; *First Nat'l Bank v. Willis*, 128 Kan. 681, 280 Pac. 782; *Shattuck v. Pickwick Stages Corp.*, 135 Kan. 602, 11 P. 2d 996.)

We think the instant case in its controlling aspects is quite analogous to that of *Crozier v. Shoe Co.*, 103 Kan. 565, 175 Pac. 376, where the parties interested in a corporation caused a new corporation to be created and transferred to it the assets of the prior corporation and agreed that the latter should cease to do business. The negotiators, who, as here, were on both sides of the contract, made no provision for the payment or discharge of the general debts and obligations of the older company. This court said:

"They all agreed, in short, to deal with and dispose of the old company's assets and business as their own, and to create a nominally independent business successor for the old Menzies company. The contracting parties made some provision for the collection of outstanding accounts of the old company and for their application to the satisfaction of its debts, but the rights of creditors are not limited to any fund thus created. If that fund is insufficient or inconvenient to reach, they are entitled to sweep these agreements aside, for the contracting parties could bind nobody but themselves. They could not prejudice the rights of creditors. . . . The parties who brought about this arrangement and effected this transaction could not create and establish the appellant as the business successor of the old company and shape its

corporate structure and business policy and endow it with the advantages of the latter without also imposing upon it the disadvantages, that is, the liabilities of the old company. The capital and assets of the old company were a trust fund for the payment of its debts. The Wisconsin company holds and enjoys all, or nearly all, the assets of the old company; it did not procure them as a wholly independent purchaser at a fair sale, nor otherwise freed of the pertinent liabilities attaching thereto. (Citations.)" (pp. 566, 567.)

The case of *Douglas Printing Co. v. Over*, 69 Neb. 320, 95 N. W. 656, was essentially to the same effect. The first paragraph of the syllabus summarizes the pertinent facts and also the law:

"Where a debtor corporation transfers all of its assets to a new one, organized for the purpose of taking such assets and therewith continuing the business in which the former corporation was engaged, and no provision is made for payment of its debts and it ceases to do business, one holding a judgment against the old corporation may bring an action at law against the new one, and a finding in his favor by the trial court will not be disturbed, when the evidence shows that the circumstances attending the creation of the new corporation, and its succession to the business and property of the old, are of such a character as to warrant the finding that the new corporation is a mere continuation of the old one."

It is quite true, of course, that one corporation may purchase outright all the assets of another corporation at a fair sale and for a specified consideration, without being thereby subjected to the payment of debts of the vendor; but that rule applies where the contracting corporations and their representatives are dealing with each other at arm's length, and where each side is looking out for the interest of its own corporation. That rule cannot be applied when the negotiators for both corporations are the same or virtually the same, and the transfer of assets is made merely for their own convenience and advantage. Here not only were the negotiators identical, but their main concern was to get rid of a situation whereby the Peoples company had lost standing with the city government of Wichita through its protracted delays and refusals to pay its license fees to the city. (*Peoples Taxicab Co. v. City of Wichita*, 140 Kan. 129, 34 P. 2d 545; Id., 294 U. S. 691, 55 S. Ct. 350, 79 L. Ed. 1231.)

In our survey of the authorities we note an attitude on the part of some eminent courts to give greater respect to the mere formality of separate corporate entities than is done in this jurisdiction. In *Coal Co. v. Nicholson*, 93 Kan. 638, 653, 145 Pac. 571, Mr. Justice Porter said:

"The decisions of this court indicate a tendency to disregard the theory of a corporation as an entity separate from its corporators where justice between the real parties to the transaction requires it."

See, also, *Cities Service Co. v. Koeneke,* 137 Kan. 7, 28, 29, 20 P. 2d 460.

Under the pleadings and statements and admissions of counsel, we think the trial court reached a just and correct judgment in this case. (See Anno.—Corporation—Debts of Predecessor, 15 A. L. R. 1112 *et seq.;* 39 A. L. R. 143; 7 R. C. L. 183-184; 14A C. J. 890-892.)

The judgment is affirmed.