NATIONAL CARLOADING CORPORA-
TION and Goodyear Tire and Rubber
Company, Appellees,

v.

ASTRO VAN LINES, INC. F/K/A Air
Land Sea International, Inc. and
Jerry H. Sills, Appellants.

No. 77–1753.

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1978.

Decided Feb. 27, 1979.

Rehearing Denied March 28, 1979.

Ansley J. Robin, McLean, Va. (Philip F. Hudock, Philip F. Hudock & Associates, McLean, Va., on brief), for appellants.

Herbert L. Karp, Alexandria, Va., for appellees.

Before WINTER, BUTZNER, and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

The plaintiffs, National Carloading Corp. and Goodyear Tire and Rubber Co., brought this diversity action against Astro Van Lines, Inc. (Astro) and Jerry H. Sills (Sills) to recover debts originally owed by U. S. Van Lines, Inc. (Van Lines). The relationships and transactions among these parties will be detailed below. After a non-jury trial on the merits, the district court entered judgment for the plaintiffs against

both defendants, and awarded punitive damages to National Carloading against Sills.[1] We affirm.

At some time prior to April 1, 1974, Van Lines incurred debts with National Carloading and Goodyear, among other creditors. All of the class A voting stock of Van Lines was owned by U. S. Van Lines, Incorporated, which in turn was owned by Eugene Ryan. Van Lines was engaged in the moving business, and 98 percent of its work came from the federal government. Van Lines' business record was not good; it had lost money for several years, and had a poor service record. Van Lines' main asset was an I.C.C. motor common carrier certificate (No. MC–36900 and subs. 5, 7, 8, and 10)— its license to operate an interstate moving company. The I.C.C. certificate was encumbered by a security interest in favor of St. Joseph Bank and Trust Company (St. Joseph) to secure a $373,000 loan. On March 28, 1976, Goodyear obtained a judgment against Van Lines for $13,150.20. On September 10, 1975, National Carloading obtained its judgment against Van Lines for $37,925. Prior to the time these judgments were obtained, however, several transactions took place which are the subject of this litigation.

On April 1, 1974, Sills purchased all the class A common stock of Van Lines from U. S. Van Lines, Incorporated.[2] Using his control of Van Lines, Sills sold one division of Van Lines for $85,000.00 and put the company on "non-use" status with the federal government.[3] On May 29, 1974, Sills applied to the I.C.C. for permission to transfer Van Lines' I.C.C. certificate to Astro, a Virginia corporation formed on May 4, 1972 under the name of Air-Land-Sea International, Inc. This company is wholly owned by Sills, and was inactive until after it acquired the certificate from Van Lines. The I.C.C. approved the transfer on Decem-

---

1. Goodyear had previously withdrawn its claim for punitive damages.

2. Control of this class of stock gave Sills absolute control over the company. It is therefore not necessary to consider the other holdings.

3. "Non-use" status, as the term indicates, means that Van Lines will do no business with the federal government. The district court found Sills did this in order to make the company appear worse in a financial sense.

ber 3, 1974, and the sale became final on January 6, 1975. As consideration for the transfer, Astro assumed the encumbrances against the certificate. It paid objecting creditors with unsecured promissory notes, although apparently it was under no contractual obligation so to do. Van Lines was in financial straits at the time of the transfer, and certainly insolvent upon the completion of the transfer. Forty-seven days before application was filed to transfer the ICC certificate, Sills either paid, or made arrangements for paying, the loan to the St. Joseph Bank and now takes the position he owns the lien against the certificate.[4]

The district court characterized the above described events as a fraud, entered judgment against Astro and Sills, and permitted the plaintiffs to proceed against the I.C.C. rights. The court went on to disregard the corporate entity of Astro and held Sills personally liable. We believe the plaintiffs are entitled to their judgment, but in holding Sills liable it is not necessary to disregard the corporate entity of Astro or Van Lines.

In discussing Astro's liability, we distinguish between the two remedies granted by the district court, the enforcement of the judgment liens against the I.C.C. certificate in the hands of Astro, and the judgment directly against Astro and Sills for the debts owed to plaintiffs by Van Lines.

■ With regard to the right to levy upon the certificate, the district court was clearly correct. The purpose of the transaction was to avoid Van Lines' creditors. Astro purchased the only valuable asset of Van Lines (its right to do business) while Van Lines was in financial difficulty. With the transfer of the certificate Van Lines had neither money nor property nor operating ability. It was a shell with no way to pay its debts. Astro had notice of this state of facts since its sole shareholder also was the sole shareholder of Van Lines. But even without this overlapping ownership,

the mere circumstances of the transaction would be enough to give Astro notice, for, as stated in *Peoples National Bank of Rocky Mount v. Morris*, 152 Va. 814, 148 S.E. 828 (1929): ". . . where a corporation transfers all its assets to another corporation with a view of going out of business, and nothing is left with which to pay its debts, such transferee is charged with notice by the very circumstances of the transaction, and takes the same cum onere." 152 Va. at 820, 148 S.E. at 829.

■ Thus, Astro is a transferee with notice of the very circumstances of the transaction, which the district court has found to be fraudulent. But that is not all; the obvious and inevitable effect of the transaction was to delay and hinder the plaintiffs in collecting their debts. Because of their position, the defendants are chargeable with that intent. Under such circumstances, there is legal or constructive fraud. *Darden v. Lee*, 204 Va. 108, 129 S.E.2d 897 (1963). Virginia Code § 55–80 provides that a transfer "given with intent to delay, hinder, or defraud creditors, . . . shall, as to such creditors . . . be void. This section shall not affect the title of a purchaser for valuable consideration unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor." Astro having actual notice of the fraud, as well as being deemed in law to have such notice, holds the certificate subject to the claims of the creditors of Van Lines under the terms of the code section just cited. The defendants, however, claim that Astro's assumption of the secured debt against the certificate and Sills' arrangement for payment of the debt furnishes a valuable consideration for the transfer and thus prevents the operation of § 55–80. This is not the case. In *Garland v. Rives*, 4 Randolph [25 Va.] 282 (1826), a case on all

---

4. The lien is actually in the name of Hamilton Bank and Trust Co., but the district court found that Hamilton is simply Sills' nominee. Sills apparently paid, or made arrangements for paying, the St. Joseph loan. The Hamilton Bank is not a party to this suit, so its rights, if any, are not affected.

fours with the one at bar, the court held under a similar statute that a deed of trust given, in favor of one creditor who had knowledge of its purpose, as a part of a plan to place certain real estate beyond the reach of another creditor was void as against the other creditor, although the deed of trust was to secure a valid debt. The court held: "Without the *bona fides* on the part of the grantee, the valuable consideration has no effect in rescuing the transaction from the literal terms and spirit of the Statute." p. 301. See also *Parr v. Saunders*, 1 Va.Dec. 724, 11 S.E. 979, 981 (1890).

Thus, the holding of the district court that the plaintiffs may subject the certificate to the liens of their judgments is correct.

The district court also entered judgment against Astro and Sills for the debts of Van Lines without stating exactly the theory upon which those judgments were entered. We think its judgment should be sustained.

There apparently is no Virginia authority to the effect that a judgment may be entered against a transferee corporation or against the sole stockholder of both the transferor and transferee corporations in the circumstances presented here.

Cases from other jurisdictions, however, with facts essentially the same as now before us, indicate that where all of the assets of one corporation are transferred to another corporation, and both corporations are under the same ownership, management, and control, the transferee corporation may be held responsible for the debts of the transferor if there was no consideration for the sale, or it was not in good faith but for the purpose of defeating the creditors of the selling corporation, or where there has been a merger or consolidation of the corporations, or where the purchasing corporation took over from the stockholders all of the stock of the selling corporation, or where the transaction amounts to a mere reincorporation or reorganization of the selling corporation. *Payne-Baber Coal Co.*

*of Kentucky v. Butler*, 276 Ky. 211, 123 S.W.2d 273 (1938). Our case fits within the rule of *Payne-Baber* because the transfer of the certificate was not in good faith but for the purpose of defeating the creditors. The same result was reached in *Avery v. Safeway Cab, Transfer & Storage Co.*, 148 Kan. 321, 80 P.2d 1099 (1938), where the court reasoned that judgment should be entered against the transferee corporation ". . . where the transfer of assets strips a debtor corporation from earning money to pay its debts, thus leaving creditors and holders of claims no resources to which they may look for the payment of their due . . . ." Another case along the same line is *Douglas Printing Co. v. Over*, 69 Neb. 320, 95 N.W. 656 (1903), where the court affirmed the entry of judgment against the transferee corporation on the ground that "this new concern is a mere continuance of the old one." 95 N.W. at 659.

Although the case did not directly permit entry of judgment against the transferee corporation, the same effect was achieved in *Ashworth v. Hagan Estates*, 165 Va. 151, 181 S.E. 381 (1935), where the court directed the filing of a claim in the receivership proceeding involving the transferee corporation. The court reasoned that "[o]f course a corporation holds its property subject to the payments of the corporate debts and when a corporation sells or transfers its entire property to a purchaser knowing the fact the latter is chargeable with knowledge that the property is subject to the corporate creditors to follow the property into the hands of the purchaser for satisfaction of their claims." The court also stated "It [the transferee corporation] knew that the syndicate was indebted and it knew that it was divesting itself of all of its property, and it should have known that this quoad these creditors it could not do." 181 S.E. at 385. Also apparently decided under Virginia law is *Colonial Ice Cream Co. v. Southland Ice Utilities Corp.*, 60 App. D.C. 320, 53 F.2d 932 (1931), in which the creditor was permitted to go against the assets of the transferee corporation, but,

more to the point here, that it should have execution against the transferee corporation for any deficiency.[5]

In the case before us, where (for practical purposes) the sole stockholder of the transferor was the sole stockholder of the transferee, where he was the president of both corporations, where two of the three directors and two of the three officers in each corporation were the same people, and where there was no consideration for the conveyance except the assumption of secured indebtedness leaving unsecured creditors to fend for themselves, we think the Virginia Court, if called upon, would affirm a trial court which had heard the case *ore tenus* and had entered judgment against the transferee corporation in the amount of the debt. We think that Astro is a continuation of Van Lines, that the transaction was not in good faith but to evade debts, and that Van Lines was left with no assets with which to pay its debts, therefore we are of opinion Astro is responsible for the plaintiffs' debts.

The district court also entered judgment for the plaintiffs against Sills on the authority of *Certain-Teed Products Corp. v. Wallinger*, 89 F.2d 427 (4th Cir. 1937). Certain-Teed, the parent corporation, following a decision to cause its subsidiary, Beaver, to cease doing business, caused certain assets of Beaver to be transferred to itself, thus preferring itself to Beaver's other creditors. This court affirmed the entry of judgment against Certain-Teed, the controlling stockholder, because the directors and officers of the subsidiary were subordinate employees of the parent corporation. The court held that in those circumstances the parent corporation was at once the de facto board of directors and managing officers of the subsidiary, so that the liability of the parent corporation was at least coextensive with that of the directors and managing officers of the subsidiary. The court also reasoned that the parent corporation had knowingly participated in the wrongdoing and profited thereby.

We think that Sills, the dominant stockholder, president, and director of both corporations, is in no better position than Certain-Teed. He caused the election of the directors of both corporations, two of three of which were the same. It had previously been shown that Van Lines and Astro are in law held to have knowledge of the circumstances of the transfer, and so must Sills, for, in addition to his position as dominant stockholder, he was the president and director of each of the corporations. While it has not been shown what the value of the certificate was, Sills is bound to have profited by its transfer, for at the very least he now operates Astro free from the just claims of the plaintiffs.

Another reason to hold Sills to liability in this case is that he has apparently caused the Hamilton Bank to purchase the indebtedness against the certificate as his nominee. It is conceivable that the Hamilton Bank may have had no knowledge of the facts surrounding the transfer of the certificate, and, although it may be Sills' nominee so far as the certificate is concerned and its encumbrance thereupon, it may yet be a good faith purchaser for value. If this were true, unless judgment were entered against Sills the plaintiffs might not be able to satisfy their judgment from the sale of the certificate without first satisfying the Hamilton Bank. The effect of this might yet be to cause the creditors to go unsatisfied without exhausting the assets of those who have caused their injury, as well as to partially nullify the setting aside of the transfer from Van Lines to Astro. In the case of *Holmes v. Harshberger*, 31 W.Va. 516, 7 S.E. 452 (1888), the West Virginia court, in construing a statute similar to Virginia Code § 55–80, subordinated a vendor's lien to the lien of a judgment creditor

---

5. *Payne-Baber, Avery,* and *Douglas* are more nearly like the case at hand than *Ashworth* and *Colonial,* for they did not involve the giving of stock as consideration for the conveyances as did *Colonial,* and, in a sense, *Ashworth.* Virginia law applies in the case at bar.

when the vendor had conveyed other than to the true purchaser in order to avoid the lien of the judgment. The entry of judgment against Sills in this case will insure payment of the judgments providing Sills has assets to do so without a contest with the Hamilton Bank should it claim to hold the lien on the certificate in good faith and for value.

Sills also contests the award of punitive damages. The district court awarded punitive damages because it found that Sills had acted deliberately, wantonly, with an indifference to the rights of others, and oppressively. He says that the rule in Virginia is that an award of punitive damages can be supported only by proof of actual malice, citing *F.B.C. Stores v. Duncan*, 214 Va. 246, 198 S.E.2d 595 (1973). We think the statement in *Giant of Virginia v. Pigg*, 207 Va. 679, 152 S.E.2d 271 (1967), that conduct which is in conscious disregard of the rights of others and is wanton and oppressive may be the equivalent of actual malice, is the Virginia rule, and that *F.B.C. Stores* distinguishes legal and actual malice but does not overrule *Giant*. In the face of the findings of fact by the district judge, which are not clearly erroneous, we do not believe its award of punitive damages was reversible error.

We have considered the other assignments of error and are of opinion they are without merit.

The judgment of the district court is

*AFFIRMED.*